JOSEPH BRIGGS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 20, 1905—Rehearing denied Feb. 13, 1906.*

1. CRIMINAL LAW—*record must be free from substantial error to sustain conviction.* Where there is a conflict of the evidence as to the guilt of the accused the record must be free from substantial error in order to sustain the verdict, particularly one imposing the death penalty.

2. SAME—*right of counsel, on cross-examination, to assume previous answer is untrue.* It is proper, on cross-examination, for counsel to assume that some previous answer of the witness is untrue, either from willfulness or want of recollection, and he may put his questions in various forms to show that fact; and it is error for the court to deny that right where the cross-examination is not pursued to an unwarrantable extent.

3. SAME—*when remark of court is prejudicial.* A remark by the court giving the jury the impression that the witness whom counsel for the accused was cross-examining had emphatically denied making the statement counsel for the accused is seeking to show she did make is prejudicial error, where the record shows that the witness had merely testified that she did not think she made the statement.

4. SAME—*when question is leading and improper.* After a witness for the People has identified the accused as the person who fired the shots, it is improper to allow counsel for the People to induce the witness to emphasize his former statement by asking the

leading question, "Are you positive that he is the man that shot" the deceased?

5. SAME—*right of accused to give his version of transaction after the arrest.* Where the police officers who arrested the accused are allowed to testify as to what was said by him after he was arrested, it is error to refuse to permit the accused to give his version of the conversation.

6. SAME—*right of accused to base cross-examination on statements of witness at coroner's inquest.* Where a witness has positively identified the accused on the trial, counsel for the accused have the right to cross-examine the witness as to whether he had not stated at the coroner's inquest that he was not positive of such identification, and are not restricted to proof of the coroner's minutes containing the signed statement of the witness.

7. SAME—*court should not express opinion on the facts.* It is not the province of the court, in a criminal case, to express in the jury's hearing any opinion upon the facts, either orally during the trial or in the form of instructions.

8. SAME—*what remarks by court are reversible error.* Where, on motion of counsel for accused (who relied on an *alibi*) to strike out a statement by a witness that he found the back door of the store where deceased was shot, open, the court says, "The evidence here is that the defendant walked that way," and afterwards, upon counsel's suggestion that "*some* defendant did," the court says, "No, this defendant; two witnesses have testified; the colored man testified that he went out that way," such remarks are reversible error.

9. SAME—*when instruction as to proof of alibi is misleading.* An instruction stating that "in this case what is known as an *alibi*,—that is, that the defendant was at another place at the time it is claimed the offense was committed,—is, in part, relied on by the defendant, to render the evidence of an *alibi* satisfactory it must cover the whole time of the transaction in question, so as to render it *impossible* that the defendant could have committed the act," is misleading.

WRIT OF ERROR to Criminal Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding.

EDWARD MAHER, special counsel and as *amicus curiæ,* for plaintiff in error:

This court will not hesitate to reverse a judgment of conviction in a criminal case where the evidence on which it is based is of an unsatisfactory character, and where the evi-

dence in the case so greatly preponderates in favor of the defendant that after a patient consideration thereof there remains such grave and serious doubt of the guilt of the accused as leads to the conclusion that the verdict of the jury is the result of prejudice and passion, and not of that calm and deliberate consideration of the evidence which the law requires. *Keller* v. *People,* 204 Ill. 604; *Cunningham* v. *People,* 210 id. 414.

If the verdict is palpably against the weight of the evidence it will be set aside. *Lathrop* v. *People,* 197 Ill. 177.

The necessity for enforcing the rule that no evidence can be admissible which does not tend to prove or disprove the issue is much stronger in criminal than in civil cases. *Dyson* v. *State,* 26 Miss. 362; *Hudson* v. *State,* 43 Tenn. 355.

Evidence that does not tend to prove the issue, to the exclusion of collateral circumstances not capable of generating a reasonable presumption or inference respecting the principal matter in dispute, is inadmissible. *Rye* v. *State,* 8 Tex. App. 153.

A witness called by the opposing party can be discredited by proving that on a former occasion he made a statement inconsistent with his statement on trial, provided such statement be material to the issue.    Wharton on Crim. Evidence, (9th ed.) sec. 481.

A trial court should not make any remark to or in the presence of the jury concerning matters of fact which might possibly in any degree influence their verdict. *State* v. *Hurst,* 11 W. Va. 54.

The trial court should say nothing, either remark or inquiry, which would appear to be an expression of opinion on the facts. *Cooper* v. *State,* 10 Tex. App. 473.

The remark of the court, "I am not satisfied with this; let the defendant take the stand," is reversible error. *Lycan* v. *People,* 107 Ill. 423.

The court should not express any opinion on the facts. He should state the law only. *Weyrich* v. *People,* 89 Ill. 90.

WILLIAM H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT N. HOLT, of counsel,) for the People:

A reversal will not be granted on account of the insufficiency of the evidence unless it is so insufficient as to clearly satisfy the court of the innocence of the accused. The mere fact that the court may have some doubt of the sufficiency of the evidence or the correctness of the verdict is not ground for reversal, but the court must be clearly satisfied that the verdict, under the evidence, is wrong or it must stand. *Cronk* v. *People,* 131 Ill. 56; *Aholtz* v. *People,* 121 id. 560; *Graham* v. *People,* 115 id. 566.

Where the evidence is conflicting it is the peculiar province of the jury to determine the truth of the matter in controversy and pass upon the credibility of the witnesses. In so doing they have the right to determine, if the circumstances warrant it, that the witnesses testifying in support of the defendant's theory have testified falsely, and wholly disregard their testimony if there is sufficient testimony supporting the theory of the prosecution upon which to base a conviction. *Gainey* v. *People,* 97 Ill. 270; *Henry* v. *People,* 198 id. 181.

The court may express his views of the law in ruling upon objections. *Territory* v. *Cordova,* 68 Pac. Rep. 919.

The court may correct counsel when he assumes a condition of fact not shown by the evidence. *United States* v. *Heath,* 20 D. C. 272.

Statements made to an attorney in the course of an argument are not addressed to the jury, and the jury should not consider them. *People* v. *Mooney,* 132 Cal. 13.

The burden of proof of an *alibi* in a criminal case is upon the accused, and in order to maintain the defense he is bound to show in its support such facts and circumstances as are sufficient, when considered in connection with all other facts in the case, to create in the minds of the jury a reasonable doubt of the charge against him. The reasonable doubt which will acquit a prisoner when his defense is an *alibi,* is a

doubt of guilt which arises from a consideration by the jury of all the evidence, as well that touching the question of the *alibi* as the incriminating evidence introduced by the prosecution.  *Carlton* v. *People,* 150 Ill. 182; *Creed* v. *People,* 81 id. 565; *Ackerson* v. *People,* 124 id. 570.

A new trial is rarely allowed for the purpose of affording an opportunity to offer impeaching evidence.  *Cochran* v. *Ammon,* 16 Ill. 315; *O'Reilly* v. *Fitzgerald,* 40 id. 313; *Fletcher* v. *People,* 117 id. 184; *Tobin* v. *People,* 101 id. 121; *Lathrop* v. *People,* 197 id. 169.

Mr. Justice Wilkin delivered the opinion of the court:

Plaintiff in error, together with John Leonard and John F. Smith, was indicted by the grand jury of Cook county on September 29, 1904, for the murder of Hans Peterson on the 12th day of that month.   Plaintiff in error was tried at the February term of the criminal court of said county, and a verdict returned finding him guilty and fixing his punishment at death.   So far as appears from this record the other defendants have not been tried.   Motions for a new trial and in arrest of judgment were interposed by counsel for the defendant, Briggs, which were overruled and he was sentenced to be executed on June 16, 1905, his counsel being allowed until that date to prepare and file a bill of exceptions. Subsequently the date of execution was postponed to June 23 for want of the presentation of a bill of exceptions, the court reciting, in different orders extending the time, that the interest of the defendant had been so seriously neglected by his counsel that sufficient time did not remain to prepare and file a bill of exceptions before the date of execution fixed, which condition of affairs was without the knowledge or procurement of the defendant himself.   On the 15th day of that month Edward Maher, of the Chicago bar, was by order of the court, of its own motion, appointed additional counsel for the defendant, the order stating that the court deems it to be in the interest of the defendant that he have

additional counsel for the purpose of presenting his case to the Supreme Court. A bill of exceptions was thereafter prepared by the said Maher, as "special counsel and *amicus curiæ*," and duly signed by the trial judge. The bill of exceptions shows that one ground of the motion for a new trial was newly discovered evidence. The complete record was filed in this court, and upon consideration of the errors assigned thereon it was ordered that the writ of error be issued and made a *supersedeas*. At the present October term the case was finally submitted for decision.

Hans Peterson was on the 12th day of July, 1904, about seven o'clock in the evening, shot in his place of business on the north-west corner of Lake and Robey streets, in the city of Chicago, causing his death a few hours later. The motive for the killing, apparently, was robbery. Immediately after the shooting of Peterson a colored man employed in the store, named William Portee, was shot by the same person who fired the fatal shot at the deceased. The guilt of the defendant, Briggs, depends wholly upon his identification as the man who did the shooting. There were present in the store at the time of the shooting, beside the deceased, a Mr. Carlton, a son of Peterson, a clerk named Knowles, a boy about twelve years of age named Albert Piemental, and the colored man, Portee. Of these persons the boy Piemental and Portee testified that the defendant, Joseph Briggs, was the person who did the shooting. None of the other parties present at the time were examined as witnesses. The defendant claimed that at the time of the commission of the crime he was at another and different place and had nothing whatever to do with the killing of Peterson or the shooting of Portee. He lived at the time on Robey street, about one-half mile south of the place of the murder, with his family, a wife and two children, and was employed by the Chicago, Milwaukee and St. Paul Railway Company. He had previously been convicted of the crime of burglary and sentenced to the penitentiary, but after serving a time

was paroled. A good deal is said in the argument by his counsel as to his good resolutions of reformation, and on the other hand counsel for the People say that he had been charged with other crimes after being paroled. His character was not put in issue. There is no evidence in this record to support the assertion that he was charged with other crimes, nor is it legally shown that he was endeavoring to make amends for his past life; but neither of these contentions could, if true, properly enter into the decision of the case, and they are therefore wholly disregarded.

It is earnestly contended that the verdict of the jury was against the weight of the evidence, which failed to prove the defandant's guilt beyond a reasonable doubt. It will not be necessary at this time to discuss the evidence at length nor to determine the question thus raised. There is a conflict in the evidence as to the guilt of the defendant, and therefore, in order to sustain the verdict, it must appear that the record is free from material and substantial errors. Especially is this true where the verdict imposes the death penalty.

It is further urged that prejudicial error was committed in the rulings of the court on the admission and rejection of evidence. As a part of the People's case, one Matilda Peterson (not related to the deceased) testified that on the morning of the day previous to the killing, which was Sunday, she saw a young man come into the store of the deceased, whom she identified as the defendant, and that the deceased changed a $10 bill for him. Her testimony was objected to as immaterial and irrelevant, but the objection was overruled. On her cross-examination, among other things, she said: "I remember going to the police station. I saw a lot of people in the room, and this man was there. I do not remember that I said to the desk sergeant, 'Which one is Briggs?' and I don't remember that they all laughed. I don't remember anything of the kind. I remember seeing him on the day before. I forget the date." Referring to

her testimony at the coroner's inquest, counsel for the defendant put the following question:

Q. "And were you asked this question and did you make the following answer: 'Where were you on the evening of September 12? A. In the evening? Q. Yes, at about seven o'clock. A. Do you mean Sunday or Monday morning?' Were those questions asked and did you make that answer?

The court: "You needn't answer. The court will not allow a lot of questions that are not impeaching in character merely for the purpose of leading up to something."

In the course of her cross-examination, speaking of a policeman whom she met at the police station, she said: "I guess I met him outside when I came in.

Q. "Was he the one you asked that question, 'Which one was Briggs?'

A. "I do not know.

Q. "Would you know that man?"

The court, without any objection being made on behalf of the People, interrupted the examination as follows:

The court: "The witness stated that she never made that statement.

Counsel for the defendant: "I think that is unfair.

The court: "After counsel has gone over the matter once and the witness has stated that she did not state it, but repeated her statement in rather emphatic language, it is not proper for counsel to assume that she did say so and ask if that is the person she told it to."

And again:

The court: "The court has ruled after the witness has once testified that she did or did not do a certain thing then it is improper for counsel to say, When you did such a thing what happened?—assuming as true what has been denied by the witness." Exception was duly preserved to this ruling of the court.

We do not agree with counsel for the People that the testimony of this witness was immaterial. The theory of the

219—22

State was, and the argument of counsel now is, that the defendant's presence in the store of the deceased on the morning before the killing was a strong circumstance tending to show that he was there at that time for the purpose of ascertaining the situation, location of the money drawer, etc., with a view to the subsequent commission of the crime, and if it was true that he was there at that time the fact was one which might well be considered by the jury as bearing upon the question of his guilt. He testified, and proved by a number of persons, that he was at his home sick on that Sunday and not out of his house. If those witnesses were entitled to belief, the clear preponderance of the testimony was that Matilda Peterson was mistaken as to his being the man she testified she saw in the store on that morning. But conceding that the weight of the testimony on this question was for the jury, the court limited her cross-examination by counsel for the defendant by too strict a rule. The purpose of a cross-examination is to test the truthfulness, candor, intelligence, memory, etc., of the witness. We do not understand that counsel may not, for that purpose, assume that any previous answer made by a witness is untrue, either from willfulness or want of recollection, and put his questions in various forms to show that fact. He does not thereby assume the witness has testified to a fact which he has not testified to. Of course, the cross-examination must be reasonable, but there is nothing whatever here to show that counsel had pursued his examination to an unwarrantable extent. We think the court erred in refusing to allow the question; also that the court, in sustaining the objection, used language in the presence of the jury prejudicial to the defendant. There is nothing in the testimony of the witness shown from the abstract of the bill of exceptions, directly and positively denying that she made the statement which counsel for the defendant assumed that she did make. As already quoted, what she said was that she did not remember having made the statement. Counsel for the Peo-

ple say that the record shows that she did positively deny
the fact.   But the abstract, to which we must look, does not
show it.   The language of the court was:   "After  *  *  *
the witness has stated that she did not state it, but repeated
her statement in rather emphatic language, it is not proper
for counsel to assume that she did so and ask if that is the
person she told it to."   Thus the judge clearly gave the jury
to understand that he regarded the witness' testimony as a
direct and emphatic denial that she made the statement,
whereas her answer was, "I do not remember that I said to
the desk sergeant, 'Which one is Briggs?'"

In the examination of the witness Albert Piemental the
State's attorney asked the witness, who had identified the
defendant as the person who fired the shots:

Q.  "Do you see anybody in court that you saw at Peter-
son's store?

A.  "Yes, sir.

Q.  "Who did you see?

A.  "Briggs (pointing to the defendant.)

Q.  "Are you positive he is the man that shot Peterson?

A.  "Yes, sir."

Counsel for the defendant objected to the answer and
asked that it should be stricken out, but the objection was
overruled.   The question was clearly improper.   It was lead-
ing, and asked the witness not only to repeat, but to empha-
size, his former statement by saying that he was positive of
the identity.   We think the objections to the question should
in fairness to the defendant have been sustained.

During the examination of the defendant himself the
following occurred:   Two police officers testified to the man-
ner of the defendant's arrest, and the court allowed one of
them, Jenkins, to state that Briggs was not arrested for the
murder of Peterson, and what was said at the time between
the defendant and himself.   The defendant testified:   "I was
grabbed in a saloon and grabbed and pulled to the side-
walk.   I said, 'Send up-stairs,'"—at which point he was in-

terrupted by an objection from the prosecuting attorney, and the court sustained the objection.

The prosecuting attorney: "I move to strike out the answer.

The court: "Strike it out.

Counsel for defendant: "I object to that. The officer said Briggs said, 'If you will come up-stairs I will give you a gun fight.'

The court: "I will sustain the objection to what was done there after his arrest. That is between him and the officers."

But when the officers had stated what occurred between them at that time, was it not proper for the defendant to give his version of the conversation?

The colored man, Portee, testified that after he was taken to the hospital on the night of the shooting, and in the afternoon of the next day, Briggs, the defendant, made certain statements to him. The defendant was asked what was then said, the question being, referring to Portee: "What did he say? Did Portee identify you when you were first brought to him?

The prosecuting attorney: "We object, and ask that it be stricken out.

The court: "Objection sustained; strike it out."

Briggs was then asked if he heard Portee's testimony at the coroner's inquest.

The prosecuting attorney: "I object."

The objection was sustained, the court saying: "For the reason that the coroner's minutes, which he signed as his statement, is the best evidence of what happened upon that occasion, as has been stated by the Supreme Court, and this is the only evidence that can be introduced."

This ruling was manifestly wrong. The defendant had not introduced the coroner's minutes in evidence and did not rely upon them in his defense, and we are unable to see upon what principle it can be held that the defendant in a case of

homicide is concluded by what took place at the coroner's inquest, as recorded in his minutes. Suppose the witness Portee had signed a statement before the coroner, upon what principle can it be said that statement is conclusive and binding upon the defendant as to what he in fact said?

Again, the defendant was asked whether Portee, the colored man, at the inquest was asked, "You cannot positively identify him?" and that he answered: "Well, I stated before that this man, either he or his brother, they look for the world alike." The prosecuting attorney said, "I object," and the objection was sustained and exception taken.

Defendant was again asked: "Was this question asked and this answer made at the inquest: 'And you say this man (indicating Briggs) looked like the man that fired the shot?' A. 'Yes.'" The question was objected to and the objection sustained.

The object of this examination was to show that the witness Portee, although he positively identified the defendant upon the trial, had previously made statements to the effect that he was not positive of the identification. We think the questions were proper and that the objections should have been overruled.

A policeman, Lieutenant O'Hara, examined on behalf of the People, testified that he found a back door to the store leading to the alley open on the night of the murder. Counsel for the defendant objected and asked that the testimony be stricken out. The court said: "The evidence here is that the defendant walked that way.

Mr. Cantwell (counsel for the defendant): "That *some* defendant did.

The court: "No, this defendant. Two witnesses have testified; the colored man testified that he went out that way."

This was an expression of opinion by the court as to what the testimony proved on a very material fact. It was wholly unnecessary in ruling upon the objection, and we

think most damaging to the defendant. It will be seen that the expression was not, "there is evidence tending to show that the defendant went that way," but, "the evidence here is that the defendant walked that way," which must have been understood by the jury as indicating that the court understood the evidence to prove that this defendant went out at that door, and if the jury believed that Joseph Briggs was the identical party who left the store after the shooting, his defense was foreclosed. At that stage of the trial, even if the jury had understood that the court merely intended to indicate that the evidence up to that time proved that the defendant escaped by that door and that two witnesses had so sworn, the People's case was made out and the burden cast upon the defendant to overcome that proof. Nor are we able to find, from the abstract of the evidence, that two witnesses did directly and positively testify to the fact, as stated by the court. Every lawyer appreciates the fact that any intimation, however slight or unconsciously made by the court in the presence of a jury as to the force and effect of evidence, is most damaging to the party against whom it is made, and in a case of such grave importance to the defendant as this must be held reversible error. It is not the province of the court, in a criminal case, to express any opinion upon the facts, either orally during the trial or in the form of instructions, and when the evidence has all been heard the court should state the law only, and leave the jury to judge of the facts. *Weyrich* v. *People,* 89 Ill. 90; *Marzen* v. *People,* 173 id. 43; *Cunningham* v. *People,* 195 id. 550.

Against the testimony of the two witnesses who identified the defendant as the guilty party, defendant testified, and introduced witnesses whose evidence tended to show, that at the time of the alleged shooting he was in a saloon a short distance from Peterson's store. There can be no doubt, from all the testimony, that the time when he was in the saloon and the time of the killing of Peterson were so nearly together as to render it improbable that he could have

committed the murder; and yet, taking into consideration the difference in timepieces and the liability of witnesses to be mistaken either as to the exact moment of the shooting or of his being in the saloon, it cannot be said that it was impossible that he could have committed the murder. At the instance of the People the court gave the following instruction:

"The court instructs the jury that in this case, what in law is known as an *alibi*,—that is, that the defendant was at another place at the time it is claimed the offense was committed,—is, in part, relied on by the defendant. To render the evidence of an *alibi* satisfactory it must cover the whole time of the transaction in question, so as to render it impossible that the defendant could have committed the act."

It is insisted by counsel for plaintiff in error that this instruction is erroneous and calculated to mislead the jury to the prejudice of the defendant. The objection is, that it requires the proof of an *alibi* to be satisfactory to the jury, whereas the law is, that if such proof is sufficient to raise a reasonable doubt in the minds of the jury it is sufficient; also that it is subject to the objection that it required the defendant to prove that he was at another place during the whole of the time of the killing, so as to render it impossible that the defendant could have committed the act. In answer to these criticisms it is said the instruction is in no sense directed to the measure of proof of an *alibi*, but that its purpose was to define that defense, and in support of the position the case of *Creed* v. *People*, 81 Ill. 565, is cited. It must be conceded that this decision in the main sustains the contention of counsel, though in that case the instruction passed upon only required proof of the *alibi* "to render it impossible or very improbable that the defendants, or any of them, could have committed the act." In the later case of *Hoge* v. *People*, 117 Ill. 35, the language of an instruction was: "The law is that the burden of proving an *alibi* devolves upon the accused, and it must be clearly and satisfactorily es-

tablished before it can avail, where the evidence otherwise makes a clear case against the accused." In passing upon it this court said, speaking through the late Justice Scholfield (p. 44) : "To require the defendant to satisfactorily explain his recent possession of the stolen property and to satisfactorily establish an *alibi* before it can avail, is imposing a burden on him but little short of convincing the jury beyond a reasonable doubt, (*Herrick* v. *Gary,* 83 Ill. 85,) whereas the burden is upon the People to establish his guilt; and if, after considering the evidence introduced by him as to either or both of these questions, in connection with all the other evidence in the case, and giving due consideration to the entire evidence, the jury shall have a reasonable doubt of the defendant's guilt he cannot be convicted."

The authorities, generally, are not harmonious as to the correctness of the instruction here in question. While a lawyer might understand it as in no way directed to the measure of proof required to establish an *alibi* but as simply an attempt to define that defense, it seems apparent to us that the jury would be very liable to construe it differently. In other words, an ordinary jury, following the instruction, might well conclude that there was evidence tending to prove an *alibi* as defined in the instruction, and yet that such evidence was not sufficient to satisfactorily establish that fact. In the case of *Herrick* v. *Gary,* cited in the opinion in *Hoge* v. *People, supra,* an instruction on behalf of defendant stated that "in order to recover in this case the plaintiff must show by the evidence in the case, to the satisfaction of the jury," etc., and it was said by Breese, J. (p. 89) : "The objection to this instruction is manifest. The first branch of it places the standard of the degree of proof required higher than the law demands in controversies of this character. It is enough that the jury shall believe, from the evidence, that the essential facts are true. The jury may so believe although the same may not be shown by the evidence to the satisfaction of the jury. This instruction requires not merely that the

evidence shall produce belief in the minds of the jury of the facts alleged, but that such belief shall be so strong as to be satisfactory. This is, perhaps, not quite so strong as to require a belief beyond a reasonable doubt, but it approximates it, and which is only required in criminal cases. The mind cannot well be said to be satisfied as to a given proposition so long as such matter remains at all in doubt.". So here, the instruction not only required the jury to believe the testimony tending to prove the *alibi,* but that such evidence, to avail the defendant, must be satisfactory,—at least the instruction is liable to that interpretation, and therefore to mislead the jury. We also think, especially in view of the facts of this case, that the instruction is too strict in requiring the proof to cover the whole of the time of the commission of the crime, so as to render it *impossible* that the defendant could have committed it. We think an instruction defining the defense of *alibi* would be sufficient and proper if it simply stated, to render the defense of *alibi* available the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act. It is true, in this case the court instructed the jury properly that if, considering all the evidence, including that of the *alibi,* the jury had a reasonable doubt of the defendant's guilt they should acquit him, and if the only grounds of reversal were the giving of the instruction objected to we should hesitate to reverse the conviction.

Numerous other errors are assigned upon the record and urged as grounds of reversal, some of which might, under other circumstances, call for consideration and decision, but in view of the fact that these errors, if they exist, will not probably occur upon another trial, we deem it unnecessary to consider them now.

The judgment of the criminal court will be reversed and the cause remanded to that court for another trial.

*Reversed and remanded.*