The People of the State of New York, Respondent, *v.* Joseph Barbato, Appellant.

(Argued June 5, 1930; decided July 8, 1930.)

*Peter L. F. Sabbatino, David H. Slade* and *Maxwell Slade* for appellant. The alleged confessions were obtained from the defendant by the assaults and the brutalities of the officers who arrested him while he was in their custody, and the trial court erred in submitting the confessions, in view of the testimony, for the consideration of the jury. (*People* v. *Weiner*, 248 N. Y. 118; *People* v. *Ledwan*, 153 N. Y. 10; *People* v. *Koerner*, 154 N. Y. 355; *People* v. *Corey*, 157 N. Y. 332; *People* v. *Maine*, 166 N. Y. 50; *People* v. *Mills*, 178 N. Y. 274.) An instruction that to establish an alibi successfully, the evidence of the alibi must so cover the whole of the transaction as to render it impossible that the defendant could have committed a crime is erroneous. (*People* v. *Kelly*, 35 Hun, 295; *Beavers* v. *State*, 103 Ala. 36; *Albritton* v. *State*, 94 Ala. 76; *Briggs* v. *People*, 219 Ill. 330; *Snell* v. *State*, 50 Ind. 516; *Stuart* v. *People*, 42 Mich. 255; *Pollard* v. *State*, 53 Miss. 410; *Gawn* v. *State*, 7 Ohio Cir. Dec. 19; *Ford* v. *State*, 101 Tenn. 454.)

*Charles B. McLaughlin, District Attorney* (*Sol Boneparth, Israel J. P. Adlerman* and *Herman J. Fliederblum* of counsel), for respondent. The confessions of the defendant were properly received in evidence. (*People* v. *Roach*, 215 N. Y. 592; *People* v. *Schermerhorn*, 203 N. Y. 71; *People* v. *Meyer*, 162 N. Y. 357; *People* v. *Trybus*, 219 N. Y. 18; *Willett* v. *People*, 27 Hun, 469; 92 N. Y. 29;

*People* v. *Ferola,* 215 N. Y. 285; *People* v. *Doran,* 246 N. Y. 409; *People* v. *Cohen,* 223 N. Y. 406; *People* v. *Becker,* 215 N. Y. 126; *People* v. *Cignarale,* 110 N. Y. 26; *People* v. *Fillippelli,* 175 N. Y. 509.) The trial court committed no error in its charge as to alibi. (*People* v. *Johnson,* 185 N. Y. 219; *People* v. *Neufeld,* 165 N. Y. 43; *People* v. *Gilbert,* 199 N. Y. 10; *People* v. *Pallister,* 138 N. Y. 601; *People* v. *Tobin,* 176 N. Y. 278; *People* v. *Huson,* 187 N. Y. 97.)

POUND, J. Julia Musso Quintieri was strangled to death in her apartment in the borough of The Bronx at some time late Saturday night, September 14, 1929, or early Sunday morning, September 15, 1929. The question is whether the jury was justified in finding from the competent evidence received on the trial that defendant committed the act of killing. The defense was an alibi. The People relied on the evidence of defendant's confessions to establish his guilt. The learned trial judge received the evidence of such confessions and left to the jury the question as to whether they were voluntary under Code of Criminal Procedure, section 395. He instructed the jury that they must acquit the defendant if they found that the confessions were the result of beatings or of fear produced by threats. The defendant testified that the confessions were extorted from him by threats and force and that he was under the influence of fear when he made them. The People's witnesses — police officers — denied that any threats or force were used, although defendant was detained by them without legal warrant until the alleged confessions were obtained — a practice condemned by this court in *People* v. *Trybus* (219 N. Y. 18, 22). If the confessions thus obtained were made voluntarily their reception in evidence is not illegal as matter of law (*Balbo* v. *People,* 80 N. Y. 484), although the circumstance may be regarded as significant as bearing on the question of credibility.

Confessions thus obtained by police officers from persons accused of crime are often offered and almost as often repudiated by defendants when on trial on the ground that they were " made under the influence of fear produced by threats." The police officers invariably deny, as in this case, that threats or violence were used. The question then arises as to the admissibility of the confessions in evidence. The rule has recently been stated by this court with precision and care: " The question whether there is any evidence of the existence of a voluntary confession is one of law. In the first instance this question must of course be decided by the trial judge. If the evidence shows without dispute that the confession was extorted by force or fear or if a verdict that it was freely made would be clearly against the weight of evidence, the judge should reject it. Only where a fair question of fact is presented should the jury be permitted to determine whether the confession is voluntary. If there is no such conflict and if the evidence points clearly to the involuntary nature of the confession the judge should exclude it as without evidence to support it." (*People* v. *Weiner*, 248 N. Y. 118, 122.)

When the evidence of the People meets the evidence of the defendant as oath against oath, with no corroboration on either side, a fair question of credibility is presented for the jury to decide. Rarely does the evidence on a criminal trial proceed beyond this point. When the evidence tends to show that the defendant's tale of threats or beating is false and that the confession was voluntary, as, for example, when no bruises are seen on the defendant's body and when with full opportunity he makes no prompt complaint to officials or friends, the trial judge should submit the question to the jury, even though the circumstances in which the confession is obtained may be suspicious. (*People* v. *Doran*, 246 N. Y. 409.) But when the weight of evidence indicates that the confession was made under the influence of fear produced by threats

the judge should refuse to admit the statement. (*People* v. *Weiner, supra.*) The confession may have been made after the threats or to parties other than the coercing officers so as to present a question for the jury whether it was given under the influence of the threats (*Reg.* v. *Rue,* 13 Cox, Crim. Cases, 209; *People* v. *Trybus, supra*) or other combinations of circumstances may arise but, speaking in generalities, the above statement of the rule will suffice for the present. Whether true or false, confessions obtained in violation of section 395 of the Code of Criminal Procedure are not sufficient to sustain a conviction.

A careful analysis of the evidence indicates that when defendant was taken into custody by the police officers at nine o'clock in the afternoon on Sunday, September 15, at Sunnydale farm near Newburgh, he asserted his innocence and said that he had left New York before the hour when the crime was committed; that he was taken to New York to the 52d precinct police station on Monday, September 16, at 12:05 or 12:10 A. M.; that the District Attorney was there and questioned him; that he still asserted his innocence; that after three-quarters of an hour the District Attorney departed leaving defendant in the hands of three police officers; that thereafter, about six o'clock in the morning of September 16, defendant wrote on a card the words: " I kill Julia Musso; " that about noon on September 16 a stenographic record was taken of an interview with defendant by an Assistant District Attorney at the station house in which he again said that he killed Julia Musso but refused or was unable to state why or how he killed her; that another stenographic record was made of an interview at the District Attorney's office at 4:45 P. M. of the same day in which he said: " I *can say* I killed her because she tried to break up my home " and " I don't remember a thing what happened there. I will plead guilty, I am willing to go to the electric chair for it."

No confession was obtained between the time the District Attorney left and six o'clock in the morning. Defendant testifies that one of the police officers struck him on the jaw and knocked him to the floor; that the other two pulled his hair and knocked him about with blackjacks, kicked him, cursed him, threatened to kill him, and made him write " I kill Julia Musso " because they menaced him with further abuse if he refused; that he was still under the influence of fear when he made the later statements, so that he made no complaint to the Assistant District Attorney or the District Attorney.

On Tuesday, September 17, he was arraigned before the magistrate in the Bronx Homicide Court. He then seems to have had a black eye or two black eyes, although the evidence on this point is not as conclusive as it might be. He claimed protection, saying that he was broken to pieces and could not talk. He was then committed to the Bronx County Jail. On September 18 he complained of pain to the warden. He then had a black eye. The warden called Dr. Radin, the attending jail physician, to examine him. He was stripped. Dr. Radin testified as follows:

" Q. Now, doctor, will you tell this jury what your examination disclosed? A. I found echymoses, that means black and blue marks, over the right arm, with some swelling of the arm, with a hemetoma over the middle of the arm. A hemetoma is a little collection, or tumor of the blood. There were several abrasions over the right elbow, and right forearm. Abrasions are superficial scratches. There are livid stripes over the right forearm and back of the right hand. There are echymoses, black and blue marks, over the left arm, also over both eyelids on the left eye; over the left malar bone, that means the cheek bone here (indicating); there were some abrasions in the right temporal region, that is, up here (indicating) —

" The Court: Witness indicates by placing his hand on the left temple.

"A. (continuing) — There were a few echymoses over the back of the neck, and he complained of pain on manipulation of the head. There are some echymoses over the right scapula; that is the shoulder blade. There were echymoses over both sides of the back, and in the left lumbar region, that is, the left loin, in the left lower axillary region — the axillary region is the side of the chest, and the left lower axillary region would be the lower part of the side of the chest — there were echymoses over the right buttock, and over the front of the right thigh and over the front of the left thigh and over the back of both thighs, there were some abrasions of the right leg."

This evidence means that his body was covered with black and blue spots and lumps or swellings, caused by a fusion of blood under the skin, which might result from a beating. The doctor also saw the black eye.

On September 20, Mr. Justice HATTING, over the objection of a representative of the District Attorney's office, granted an order that defendant be photographed and on September 23 he was photographed in a nude condition. The photographs tend to corroborate the evidence of Dr. Radin.

The District Attorney on this evidence was called on to account for the defendant's condition. Although he offers some proof to show that defendant's condition was not as serious as defendant sought to make it, he makes no attempt to deny that it was as testified to by Dr. Radin and shown by the photographs. He points out that although defendant had testified that he was kicked in the stomach, no marks, except a scar from an appendicitis operation, were found on the stomach. He urges that the marks all might have been received in a struggle with the deceased. She bore injuries — a broken nose, wounds on her lips, a lacerated finger, black and blue eyes which were inflicted before death. The room where the body was found bore no evidence of a struggle.

Such a hypothesis scarcely harmonizes with the

admitted facts. After denying his guilt, from the time of his capture until six o'clock the following morning, defendant suddenly writes on a card: " I kill Julia Musso." Was his change of mind due to reflection and repentance under the long-continued questionings and exhortations of the police officers (Cf. " Inquisitorial Confessions " 1 Cornell Law Quarterly, p. 77) or did they scare him into making it? He gives no details of the killing, either because he cannot or because he will not. One might consider, as bearing on the question of his guilt and the voluntary character of his confessions, why he was thus reticent. He made to the police officers a bare admission of guilt. They are unable, as was the District Attorney, to get more out of him except his statement that he was at the apartment of the deceased. He comes out of the long interview with the officers with palpable evidence of the application of physical force to his body. Nothing but the merest supposition suggests that his eye was blackened or his body bruised when he was first brought to the station house. When he was taken to jail, his body bore evidence of severe beating and bruising.

We are not gifted with the power to discern truth with mathematical certitude. Defendant may have exaggerated the severity of the attacks upon him. He may have imposed a story upon us which is a creation of his imagination. Who can say? We must weigh the evidence and not speculate on what may have happened. His counsel repudiated his evidence that the District Attorney instructed the police officers to take him out and beat him, even before the District Attorney denied it. To that extent we must treat him as a fabricator of false evidence. Yet on the weight of evidence the physical facts corroborate defendant's statement that injuries were inflicted by the police officers to procure a confession. The trial judge should have excluded the confessions. (*People* v. *Weiner, supra.*)

It has been said: " One is driven to the conclusion that the third degree is employed as a matter of course in most

states, and has become a recognized step in the process that begins with arrest and ends with acquittal or final affirmance." (43 Harvard Law Review, 618.) The practice in England seems otherwise. Statements made after arrest in answer to questions by police officers, if legal evidence (as to which the law is not settled), are cautiously received. (*Ibrahim* v. *Rex*, [1914] A. C. 599.) Lawless methods of law enforcement should not be countenanced by our courts even though they may seem expedient to the authorities in order to apprehend the guilty. Whether a guilty man goes free or not is a small matter compared with the maintenance of principles which still safeguard a person accused of crime. If torture is to be accepted as a means of securing confessions, let us have no pretense about it but repeal section 395 of the Code of Criminal Procedure and accept all evidence of all confessions however obtained, trusting to the jury to winnow the true from the false. As long as the section remains in the Code, the courts are bound to give as full protection to an accused as the evidence warrants.

The reception of this evidence was not the only error committed on the trial. The trial judge instructed the jury on the subject of *alibi* as a defense. He said: " It is obviously essential to the satisfactory proof of an *alibi* that it should cover the whole of the time of the transaction in question, so as to render it impossible that the prisoner should have committed the act; it is not enough that it renders his guilt improbable merely."

In view of what was said in the charge as a whole on the subject of reasonable doubt (cf. *Commonwealth* v. *Choate*, 105 Mass. 451, 459) and of the disposition we are to make of this case, we would not comment on this error were it not that the same language appears in another record before the court and seems to be accepted by trial judges as a proper statement of the law. It casts too great a burden on the defendant. If the proof as to an *alibi* raises a reasonable doubt in the minds of the jury as to whether the accused was present at the place and time

where and when the crime was committed, the accused is entitled to have the defense fairly treated like any other defense and is not obliged to establish that it was impossible for him to commit the act charged. If under the evidence tending, if true, to prove an *alibi*, it may have been *possible* for the defendant to have committed the crime, it is still for the jury to determine whether, if the evidence is true, he availed himself of the possibility it afforded. (*Beavers* v. *State*, 103 Ala. 36, 40; *Briggs* v. *People*, 219 Ill. 330, 343–345; *State* v. *Ward*, 61 Vt. 153, 192; *Stuart* v. *People*, 42 Mich. 255, 261; *Ford* v. *State*, 101 Tenn. 454, 456, 457; Wharton's Crim. Law [11th ed.], vol. 1, § 380.) The instructions of the court were too strict in this respect. If the proof as to an *alibi*, when taken into consideration with all the other evidence, raises a reasonable doubt as to defendant's guilt, he is entitled to an acquittal.

The judgment of conviction should be reversed and a new trial ordered.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment reversed, etc.