In the Matter of ALLAN A., Appellant.—In a proceeding pursuant to article 7 of the Family Court Act, the appeal is from an order of the Family Court, Queens County, dated July 1, 1977, which, upon finding that appellant had committed acts which, if done by an adult, would constitute the crime of sexual abuse in the first degree, adjudicated appellant a juvenile delinquent and conditionally suspended judgment for one year. Order reversed, on the facts, without costs or disbursements, and petition dismissed. The complainant and appellant lived in the same neighborhood. The complainant testified that as she was returning home form a local store one evening at about 6:00 P.M., she was sexually assaulted. She had a close look at her assailant for several minutes in good light and heard him speak several times before he fled. Two days later, a detective took the complainant to the area in which she had been shopping. He left her and a companion in his car while he went into some stores. Finally, he took her into an apartment building and they rode the elevator to the sixth floor where they heard screaming as they emerged from the elevator. The complainant immediately recognized one of the raised voices as that of her assailant. The detective rang the bell to one apartment and when the appellant opened the door, the complainant identified him as her assailant. While the complainant's description of her assailant was less than perfect, her testimony was credible and, standing alone, would have supported the adjudication. Appellant, however, produced four witnesses who testified that he was at home when the attack occurred and it is the testimony of these witnesses that casts a reasonable doubt on his guilt. The testimony of three of the witnesses might be called into question. Two were close relatives— appellant's mother and sister—and the third, a businessman, had been a long-standing friend. The intimacy of the relationship is indicated by the fact that on the very day of the attack, the businessman had taken out, in his own name, a substantial loan for the appellant's family. The fourth witness, a neighbor, had known the appellant's family for about three years, but there is nothing in the record to indicate that the relationship was such as to cause her to deliberately lie in order to protect the appellant from the charges against him. This last witness testified that she came to the appellant's home at about 5:30 on the evening in question, with empty cartons, to help the family pack since they were soon going to move to a new apartment. She stayed for dinner, which was served about 6:00 o'clock, and she did not leave until 7:30 P.M. She said that appellant received a telephone call at about 6:00 or 6:05 P.M. and that, from her vantage point, she observed him for the duration of that telephone conversation. The businessman had previously testified that he telephoned appellant's home at about 6:05 P.M., a few minutes after the regular closing time of his business. Thus, the testimony of the businessman and neighbor was in complete accord on this point. It was further the sworn testimony of the neighbor that appellant was never out of her sight for more than a minute or two,

that she, the witness, never left the dining room table, that she was always in full view of the front door and that appellant never left the apartment. The testimony of the appellant's mother and sister was consistent with, and corroborative of, this account of the events of the evening. In its findings of fact, the court commented extensively on the credibility of each witness. With respect to the neighbor, however, the only observation was: "The court does not question the visit with this lady and [appellant's] mother. The court does question her testimony as to the [appellant's] presence at home at that particular time." The court then made the following general observation regarding the testimony of all of the alibi witnesses: "Defense counsel in his summation marveled at the 'meticulous timetable' of the [appellant's] mother in remembering the exact times within which she carried out her various tasks that day. It is this 'meticulous timetable' that also impressed the Court. In fact, the Court was so impressed that it noted that all of the timetables of each of the witnesses had been carefully synchronized. Synchronization is not accidental. Rather, it is prepared carefully, meticulously. Accordingly, all of the testimony of the witnesses for the defense regarding the whereabouts of the [appellant] shall be disregarded by this court as being beyond reasonable credibility." Regarding the neighbor, the court made no specific finding that she was unworthy of belief because of her demeanor or lack of candor or because she gave equivocal answers. Our impression of the neighbor's testimony is that it was the straight-forward testimony of an honest responsible adult that was not rebutted or seriously weakened on cross-examination. We also believe that in commenting on the "carefully synchronized" testimony of all of the alibi witnesses, the court neglected one logical explanation for the extent to which the accounts coincided: the witnesses may have been telling the truth. Of course, the mere presentation of the testimony of several alibi witnesses does not automatically require acquittal (see, e.g., *People v Regina,* 19 NY2d 65). It is the quality and not the quantity of the testimony that is of ultimate importance. But to win an acquittal, the law has long been that a defendant need only show that "the proof as to an *alibi,* when taken into consideration with all the other evidence, raises a reasonable doubt as to defendant's guilt" *(People v Barbato,* 254 NY 170, 179; see, also, *People v Tapia,* 11 AD2d 679; *People v Johnson,* 37 AD2d 733). On this record, the appellant has created a reasonable doubt as to his guilt. The order adjudicating him a juvenile delinquent must be reversed and the petition dismissed. Damiani, J. P., O'Connor and Gulotta, JJ., concur.

Lazer, J., dissents and votes to affirm the order, with the following memorandum: It is undisputed that the complainant had a close look at her assailant and heard his voice at the time of the assault upon her. Subsequently, upon being taken to the appellant's home by a detective, she recognized appellant's voice before seeing him and then identified him as soon as he came into view. In adjudicating the appellant a juvenile delinquent, the Family Court concluded that the alibi testimony offered on his behalf had been orchestrated. The majority believes that reversal is required because the testimony of the alibi witnesses has created a reasonable doubt. I disagree. The credibility issues here were particularly appropriate for determination by the trier of the facts (see *People v Putnam,* 55 AD2d 608). The majority has focused on the fact that in rejecting the testimony of one of the alibi witnesses, the Family Court failed to mention her demeanor or any equivocal answers or lack of candor on her part. Indeed, the Family Court's conclusion was even stronger—for it found that the testimony of all

the alibi witnesses was "beyond reasonable credibility." On this record, we should not disturb the trier's adjudication.