■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY ALLEN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 29, 1975 (the date on the clerk's extract is July 7, 1975), convicting him of murder, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. In our view, a number of errors, which we hereafter chronicle, combined to deprive defendant of his right to a fair trial. Defendant was accused of murdering one Delaine Pearsall on June 1, 1973. At the trial Linda Ryals, the victim's mother, testified that she lived with her four children and her brother, Lonnie Brown, in an apartment at 3511 Mermaid Avenue in Brooklyn. On the morning of June 1, 1973, at about 9:00 A.M., she and the children went across the street to her mother's house. Between 10:00 and 10:30 A.M. she sent Delaine back to their apartment on an errand. According to the testimony of Lonnie Brown, Delaine never arrived there. Several prosecution witnesses testified that Delaine was found at about 1:00 P.M. lying on a stairway landing at 3511 Mermaid Avenue. She died shortly thereafter. Significantly, Linda Ryals testified that on two occasions she returned to her apartment to search for her daughter, the first time between 12:00 noon and 12:30 P.M., and the second time at about 12:40 P.M. On both occasions, she passed the landing on which Delaine was later found and did not see her. Consequently, it appeared that Delaine was placed on the landing between 12:40 and 1:00 P.M. Defendant presented two witnesses on his behalf. The first, Rose Winfield, testified that she had seen defendant at about 11:00 A.M. on June 1, 1973 at 3103 Mermaid Avenue. She spoke to him for about five minutes. She again saw him between 1:00 and 1:30 P.M. the same day, this time on Mermaid Avenue near 29th Street. The second witness, Shirley Edmunds, testified that she had seen defendant at about 10:00 A.M. on June

1, 1973, at 3107 Mermaid Avenue and spoke to him for about 15 minutes. She saw him again at about 1:00 P.M. that day, this time at the corner of Mermaid Avenue and 31st Street. Thus, the testimony of defendant's witnesses placed him several blocks from 3511 Mermaid Avenue at least one-half hour after Delaine Pearsall apparently disappeared, and also placed him several blocks from the scene at the time Delaine was found, which was no more than 20 minues after she had been placed on the landing. Nonetheless, with respect to defendant's witnesses, the court charged: "They are not really alibi witnesses because you gentlemen who know the streets in Brooklyn, you know that 3103 Mermaid Avenue and 3107 Mermaid Avenue are just four or five blocks from 3511 Mermaid Avenue." Defense counsel duly excepted to this portion of the charge. We agree that it was error. In *People v Barbato* (254 NY 170, 178), the trial court gave a charge similar in nature to that given here: " 'It is obviously essential to the satisfactory proof of an *alibi* that it should cover the whole of the time of the transaction in question, so as to render it impossible that the prisoner should have committed the act; it is not enough that it renders his guilt improbable merely.' " The Court of Appeals held that this charge placed too great a burden upon the defendant, stating (p 179): "the accused * * * is not obliged to establish that it was impossible for him to commit the act charged. If under the evidence tending, if true, to prove an *alibi,* it may have been *possible* for the defendant to have committed the crime, it is still for the jury to determine whether, if the evidence is true, he availed himself of the possibility it afforded." Plainly, then, the cited portion of the charge was improper. Although defendant's alibi was by no means ironclad, he was entitled to have the testimony considered by the jury as a partial alibi, one which might create a reasonable doubt as to his guilt. The cited portion of the court's charge deprived defendant of this right by implying that an alibi defense, to be valid, must establish that the defendant could not possibly have committed the criminal act charged. The People admit that this was not proper, but argue that the error was not prejudicial to the defendant because (1) the court followed it with a "full and complete" charge on alibi, and (2) the jury did, in fact, deliberate on the alibi testimony, as evidenced by its request that part of that testimony be re-read. We cannot agree with the People's position. The fact that immediately after the erroneous portion of the charge the court told the jury "you may consider the fact that he was seen there" (at the locations testified to by the alibi witnesses), did not serve to correct the impropriety. At best, the jury was left confused as to how it should consider the alibi testimony. At worst, the impression created by the erroneous portion of the charge was left undiminished, to wit, that defendant had failed to establish a valid alibi. Similarly, the jury's request for a re-reading of the testimony of the defense witnesses with respect to the times they saw the defendant does not mean that proper consideration was given to such testimony. Rather, the re-reading merely may have confirmed to the jurors that it was not "impossible" for defendant to have committed the crime, and led them to disregard the testimony in accordance with the erroneous portion of the court's charge. Accordingly, we cannot say that the error was without effect. The alibi defense was further improperly undermined during cross-examination of Rose Winfield. In response to a question by the prosecution, Mrs. Winfield testified that several days after the crime, she had gone to the police precinct with defendant's mother. The prosecutor then inquired into the substance of a conversation she had at the precinct with a police detective: "A And did you tell Detective Cadieux at that time that you were concerned because you were worried about the children still

on the street, and you wanted to make sure that the right man was caught? Do you remember that conversation? A I said something to that effect. Q Do you recall him telling you—MR. MILLMAN [defense counsel]: Objection as to what he told her. MR. SCHWARTZ [Assistant District Attorney]: As to the state of mind of this witness. THE COURT: Objection overruled. Q That you shouldn't worry; that he was sure it was the right man, and you shouldn't worry. Do you remember the conversation; not those exact words, but do you remember that conversation? A Yes, I remember him saying that to me. * * * Q Were you satisfied with Detective Cadieux's answers to you and discussion with you? MR. MILLMAN: Objection. THE COURT: Overruled. In other words, he told you that he is sure they had the right man. Did you tell him that you were sure he did not have the right man? MR. MILLMAN: I would object to the form of that question, also. THE COURT: Objection overruled. THE WITNESS: I think I was still discussing with him that I had seen Barry Allen at 11:00 o'clock. THE COURT: And therefore, he was not the right man? THE WITNESS: That was my opinion. THE COURT: Did you tell that to the Detective? THE WITNESS: I don't believe I said that." It was error for the prosecutor to ask Mrs. Winfield if Detective Cadieux had told her not to worry, that he was sure defendant was the right man. That statement was plainly hearsay, and properly objected to as such by defense counsel. It was not admissible to show the state of mind of the witness, since Mrs. Winfield's state of mind was in no way relevant in this matter. Even if this statement were not hearsay, it should have been excluded. The fact that the police believed they had apprehended the perpetrator of the crime was irrelevant to the question of defendant's guilt and highly prejudicial to the defendant as well. This prejudice was heightened by the fact that in summation the prosecutor essentially asked the jury to view this case from the perspective of Detective Cadieux. This hearsay statement formed the basis of the prosecutor's improper attempt to undermine Mrs. Winfield's testimony by showing that she had failed to insist on defendant's innocence with sufficient vigor in the face of Detective Cadieux' assurances that defendant was guilty. This court has often held that a prosecutor may not attempt to discredit an alibi witness upon the ground that the witness did not inform law enforcement authorities of his or her knowledge (see, e.g., *People v Hamlin*, 58 AD2d 631). It is true that the cross-examination here did not violate the letter of *Hamlin* because Mrs. Winfield testified that she *had* informed the police that she had seen defendant on the day of the crime. However, it is our view that the above questioning did violate the spirit of *Hamlin*. Simply stated, if there is no duty on the part of an alibi witness to contact the police, and if the prosecutor may not seek to discredit the witness on such a basis, there can be no duty on the part of an alibi witness who does go to the police to insist, with a certain vigor, that the defendant is innocent in the face of police assurances that he is not. Accordingly, the prosecutor's attempt to discredit Mrs. Winfield on such a basis was improper. The effect of the error could only have been worsened by the court's participation in the improper questioning. The alibi defense was still further improperly undermined when, by way of rebuttal, the prosecution presented Detective Cadieux, who testified that Mrs. Winfield did not tell him she had seen defendant on the morning of the crime, and that he had not met Shirley Edmunds, defendant's other alibi witness, prior to the trial. The People concede, and properly so, that the presentation of this rebuttal testimony was improper, because the questions of whether Mrs. Winfield told Detective Cadieux that she had seen defendant and whether Mrs. Edmunds ever contacted the police were collateral to the question of

whether defendant murdered Delaine Pearsall (see *People v Tufano,* 69 AD2d 826; *People v Goggins,* 64 AD2d 717). Further, the testimony about Shirley Edmunds violated the holding of *People v Hamlin (supra),* as such testimony was plainly intended to discredit Mrs. Edmunds upon the ground that she never approached police with her information. The prejudicial effect of the improper rebuttal was reinforced by the prosecutor on summation when, in commenting on the proof of defendant's guilt and the effect of Mrs. Winfield's testimony, he stated: "Is there a doubt? A doubt on the basis of a woman who a year and half later, never spoke to the family, saw him [defendant], made it that day at eleven o'clock with two other people, and never told the detectives, because he swears they didn't?" The People concede that this comment was improper, because it was based upon the improper rebuttal testimony. The comment also served to exacerbate the afore-mentioned *Hamlin* error, inasmuch as it essentially asked the jury to disregard the testimony of Mrs. Winfield because she had not previously brought it to the attention of the police. Lastly, with respect to the alibi testimony, we note our view that the prosecutor's comment that Rose Winfield "cheats, and that is what is raised as a defense" was not a fair comment on the evidence given the confusion surrounding the matter on which it was based. The cumulative effect of all these errors was to destroy the proffered alibi defense. Defendant was entitled to have this defense fairly treated like any other defense (see *People v Barbato,* 254 NY 170, *supra; People v Johnson,* 37 AD2d 733). The record reveals that such treatment could not have occurred in this case. Nor were these the only errors to appear. On summation, the prosecutor argued that the defense position was simply that the prosecution witnesses, including three detectives and an Assistant District Attorney, "got together with Delaine Pearsall's body sitting in Coney Island Hospital and weaved a set of facts to get Lonnie [Brown] off and get Barry Allen in." It is well settled that a prosecutor may not argue to the jury that in order to believe the defense it must find that the People's witnesses had committed perjury, or concealed or tailored evidence, or conspired to get the defendant (see *People v Dennis,* 62 AD2d 1022; *People v Burnside,* 52 AD2d 626). We see no difference between such comments and the one made by the prosecutor here. We note that the prejudicial effect of the error was again reinforced by the court, which, in response to the meritorious objection of defense counsel, informed counsel that it wished he would stop interrupting the prosecutor's summation. This was not the only time the court castigated defense counsel for interrupting the summation of the prosecutor. While the court's criticisms in this regard were relatively mild, we do not believe they were justified by the record. Defense counsel had raised only one prior objection when the court made its first comment. On each of the next three occasions of a defense objection, the court again commented about the interruption. In our view, the objections interposed by defense counsel were not frivolous. Under these circumstances, we see no justification for the comments made by the court. Counsel eventually felt compelled, in order to avoid further criticism, to save a number of his objections until after the prosecutor had completed his summation. We also note that the prosecutor raised several objections to defense counsel's summation, based, as were defense counsel's, upon alleged improper comment and unfair implication. However, the court did not criticize the prosecutor for interruptions, but rather argued with defense counsel about the inferences he wished the jury to draw. In our view the atmosphere thus created was not conducive to either effective representation by defense counsel or to a fair consideration of the evidence by the jury.

Finally, we hold that the prosecution made several other improper and prejudicial comments while addressing the jury. In his opening statement, the prosecutor informed the jury that the defendant had "dumped [Delaine Pearsall] as trash." Then, in summation, after arguing to the jury that the victim had been "lacerated and raped" (although there was no evidence of rape), the prosecutor submitted that the defendant had "ripped her open, picked her up like a chicken and shook her". Finally, the prosecutor commented, "It is a long time since Delaine Pearsall is dead. She is cold." These statements cannot be considered fair comment on the evidence. Rather, they served only to inflame the jury and to unduly prejudice the defendant. Upon reviewing all these instances of impropriety, we find only one conclusion possible: that the trial afforded to defendant bore no resemblance to the fair trial to which he was and is entitled as a matter of right. Accordingly, we reverse and direct a new trial. Damiani, J. P., Mangano and Rabin, JJ., concur; Gulotta, J., concurs, in part on constraint of *People v Hamlin* (58 AD2d 631).