■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY JACK, Appellant.—Judgment, Supreme Court, New York County (Frederic S. Berman, J.), rendered November 20, 1987, convicting the defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, reversed, on the law, and the matter remanded for a new trial.

Supreme Court's failure to give the requested alibi charge to the jury was reversible error. According to the testimony of the police officers who participated in the "buy and bust" operation, the alleged sale of narcotics occurred between approximately 2:20 and 2:25 P.M. in the stairwell between the first and second floors of 2211 Eighth Avenue. The defense, however, offered testimony that the defendant left his sister's second-floor apartment for the first time after 2:20 that afternoon and was arrested immediately upon entering the stairwell.

Undercover Officer Alice Delaney testified that she followed a woman into the building where she encountered a man on the stairs, near the landing between the first and second floors. She asked him for two "red caps" and was told to wait there while he went upstairs to the second floor. He returned a few minutes later and exchanged something with the woman Officer Delaney had followed into the building. He then asked Officer Delaney for $20 and she gave him two $10 bills from the prerecorded buy money. He gave her two red-capped vials and she left the building. It took her "no more than three minutes" to return to her car where she wrote down the location of the sale and a description of the seller on a scrap of paper. At 2:27 she radioed her backup team that she had made a purchase and gave a description of the seller. She identified the defendant in court as the man who had sold her the red-capped vials, although she noted that he had lost a lot of weight since his arrest.

According to the arresting officer, Sgt. William Qualls, he entered the lobby of the building accompanied by another officer "at about 2:25 or 2:30", shortly after receiving Officer

Delaney's radio call. There was no one in the lobby apart from an elderly man with braided hair. Sgt. Qualls proceeded up the staircase, but after he reached the third floor he started back down while the other officer continued to the fourth floor. Just before Sgt. Qualls reached the second-floor landing, the defendant entered the stairwell from the second-floor hallway. Upon seeing the defendant, whose clothes met the radioed description, Sgt. Qualls grabbed him and said, "I'm a cop." A struggle ensued during which the defendant tried to dispose of a vial he had in his hand. Sgt. Qualls testified that he removed $222 from the defendant's pocket, including the two prerecorded $10 bills.

Defendant filed notice pursuant to CPL 250.20 of his intention to call his sister, Marilyn Jack, as an alibi witness. According to the sister's testimony, the defendant came to her apartment between 8:00 and 8:30 on the morning of October 30 to borrow money to get an apartment. He remained there with her until after 2:00 P.M. Although she could not be more exact about when he left, she was generally aware of the time because she was watching television soap operas when the defendant told her that he was "going downstairs". The defendant testified that he went to his sister's apartment with $200 of his girlfriend's money and $2 of his own, to borrow the remaining $50 he needed for the security deposit for an apartment on 145th Street between Seventh and Lexington Avenues. Although his sister did not lend him the money, he stayed at her apartment until about 2:20 P.M. He asked her the time as he prepared to go and, when she asked where he was going, he said he was "leaving, going downstairs". Defendant maintained that upon leaving the apartment for the first time all day, he was accosted by a tall, dark-skinned man in the stairwell who told him "You the guy I'm looking for", and ordered him to turn and face the wall. Defendant maintained that it was the tall, dark-skinned officer who placed him under arrest, and he denied ever seeing Officer Delaney or Sgt. Qualls prior to trial.

The court rejected defense counsel's request for an instruction to the jury on the alibi defense, finding that the evidence only raised an issue of credibility as to when the defendant left his sister's apartment. The jury, after having the testimony of the defendant and Sgt. Qualls read to them during deliberation, convicted the defendant of the charge of criminal sale of a controlled substance in the third degree but acquitted him of the third degree possession charge. In the interest of ending the deliberations, which had taken two days, the court

granted the People's motion to dismiss the seventh degree possession charge.

We disagree with Supreme Court's conclusion that there was no testimony that the defendant was somewhere else at the time of the sale. The defendant claimed that he left his sister's apartment only once, at about 2:20 P.M., and was immediately arrested when he went from the second-floor hallway into the stairwell. His sister gave testimony corroborating the length of his stay and that he had not left the apartment before his final departure immediately before arrest. Thus, although imprecise as to the exact time of his departure, their testimony could establish that the defendant was in the apartment, not in the stairwell, at the time of the sale, which allegedly occurred in the stairwell.

The accused is not obligated to establish an ironclad alibi—i.e., that he was somewhere which made it impossible for him to commit the crime alleged—in order to be entitled to an alibi charge. As in *People v Allen* (74 AD2d 640, 641 [2d Dept 1980]), the defendant herein was entitled "to have the testimony considered by the jury as a partial alibi, one which might create a reasonable doubt as to his guilt." In *Allen,* the defendant called two witnesses who saw him a few hours before and just after the crime, several blocks from where the victim had disappeared and from where her body was discovered. The trial court in that case rejected the claim that the defendant had established an alibi because the witnesses had observed him "just four or five blocks" from the scene of the crime. The Second Department reversed, citing *People v Barbato* (254 NY 170, 179 [1930]), wherein the Court of Appeals held that even where the alibi testimony leaves open the possibility that the defendant could have committed the crime, "it is still for the jury to determine whether, if the evidence is true, he availed himself of the possibility it afforded." *(People v Holt,* 67 NY2d 819 [1986].)

The testimony of defense witnesses in this case raises a question as to whether the defendant was in his sister's apartment and not in the stairwell when the crime occurred. As has been often noted, an alibi need not be completely believed to be availing to the defendant. It may be successful if it is not disproved by the People beyond a reasonable doubt. In this case, in which the jury required two days to reach any verdict and, at that, acquitted the defendant of one of the charges, and was unable to agree on another, the possibility that the jury would have acquitted the defendant if properly instructed concerning alibi is a real one. A new trial is,

therefore, warranted. Concur—Ross, Asch, Kassal and Rosenberger, JJ.

Kupferman, J. P., dissents in a memorandum as follows: The defense was misidentification, and this aspect was specifically brought home to the jury in the charge by the court. *(Cf., People v Bruno,* 77 AD2d 922, 923.)

The defendant was either in his sister's apartment or else on the stairwell in the same house. He was not some distance away. *(See, People v Holt,* 67 NY2d 819.)

If error there be in refusing a special alibi charge, harmless error analysis should apply under these circumstances.