STATE OF IOWA, Appellee, v. LULU BENNETT, Appellant.

**Criminal law:** EVIDENCE: INSANITY: EXPERT OPINION.   An expert wit-
1   ness who has been examined regarding a defendant's condition
of mind should not be permitted to go further and give his
opinion as to the responsibility of the defendant for his criminal
act; as a determination of that question is for the jury.   But even
if the opinion was erroneously excluded the ruling was not pre-
judicial, where the witness, as in this instance, had been fully
examined as to defendant's mental condition.

**Same.**   An objection that evidence is incompetent, irrelevant and
2   immaterial, and that no foundation has been laid for the introduc-
tion of expert evidence, does not raise the question of the
competency of the witness.

**Criminal law:** CONFESSION: ADMISSIBILITY: EVIDENCE: INSTRUCTION.
3   The confession of an accused to be admissible in evidence against

him must be voluntarily made; and a determination of this
question, where the evidence is conflicting regarding promises
claimed to have been made to induce the confession, is for the
jury, under proper instructions.   In the instant case the evi-
dence is held to authorize a submission of the question as to
whether the confession was obtained through a promise of
leniency, and the instruction under which the matter was sub-
mitted was as favorable to defendant as the law warrants.

**Confessions.**   A confession obtained by a county attorney after
warning defendant that anything said would be used against
him is admissible.

**Murder in first degree:** SUFFICIENCY OF EVIDENCE.   Evidence held
to sustain a conviction of defendant of murder in the first de-
gree, notwithstanding the contention that her condition of mind
was such that she could not have deliberately and premeditatedly
committed the offense.

*Appeal from Scott District Court.*—HON. D. V.
JACKSON, Judge.

WEDNESDAY, JUNE 30, 1909.

DEFENDANT was indicted for the crime of murder.
Upon trial to a jury she was convicted of murder in the
first degree and sentenced to the penitentiary for life.
She appeals.—*Affirmed.*

*W. G. Mott,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,*
Assistant Attorney General, for the State.

DEEMER, J.—Early in the morning of July 12, 1908,
the body of Mary Mason, wife of Charles Mason, was
found in the doorway of a coal shed which was to the
rear of the Mason home.   Upon the head of Mrs. Mason
there was a bruise and a cut from which considerable
blood had flowed.   The body was found as a result of a
search instituted when it was discovered that she was not

at home as usual. Mrs. Mason was alive when discovered, but unconscious, and she never regained consciousness; her death resulting on the 13th of July. The house in which the Masons lived is what was called a "four-family one"; but two families occupied it. The Mason family, consisting of four members, lived on one side, and defendant and one Crutchfield lived on the other. It appears that defendant and the deceased had some trouble on the evening of the 11th of July. Charles Mason, a son of the deceased, on learning of this, spoke to the deceased about it, and she said, "Don't speak to that black minx." Defendant, when spoken to about it, cursed the deceased and called her vile names and said "she would get someone" that night. To another witness defendant declared that "I will kill me a bitch before I go to bed tonight," and to another she declared practically the same thing. The bruise and cut upon the head of the deceased were caused by the use of an axe, and an axe with blood stains upon it was found on the morning of the 12th of July standing by the south door of defendant's house. It also appears that defendant made a confession to two Davenport policemen, in which she stated: That she struck the deceased with an axe while she (deceased) was sitting in a chair leaning forward and while she was either asleep or drunk; that she fell out of the chair; and that she (defendant) then dragged Mrs. Mason around the house to the coal shed, and either pulled her in upon the coal or left her upon the outside of the shed, the testimony being in a little confusion upon this last proposition. The defendant also stated that she had made up her mind at about 5 o'clock on the evening of July 11th to kill the deceased. There is also testimony that the deceased came to her death as a result of the wound inflicted upon her.

From this brief recitation of the facts, it is manifest that the verdict has ample support in the testimony, and

that, unless some error was committed by the trial court, the judgment should stand. For appellant it is contended that the court was in error in its rulings on the admission and rejection of testimony and in submitting murder in the first degree.

Attempt was made to show that defendant was insane and so addicted to the use of alcohol and other drugs that she was incapable of forming a specific intent to kill and unable to form any criminal intent.

1. CRIMINAL LAW: evidence: insanity: expert opinion. Testimony in support of these claims was adduced, and defendant produced two doctors, to whom hypothetical questions were propounded regarding defendant's sanity, and, after stating that under the assumed facts defendant would be abnormal, very nervous, and temporarily insane, they were asked if she would be irresponsible or responsible mentally for her acts. Objections to these questions were sustained. These doctors were fully examined and cross-examined regarding defendant's condition of mind upon various assumptions of fact, and, even were there error in sustaining the objections, the rulings were without prejudice. But under our decisions there was no error. The questions called for answers which the jury was bound to settle—that is to say, for the responsibility of defendant in view of her mental condition—and an expert is not permitted to solve this question for them. *State v. Mc-Gruder,* 125 Iowa, 747; *Bells v. Betts,* 113 Iowa, 111; *Martin v. Light Co.,* 131 Iowa, 724, and cases cited.

The state called in rebuttal a doctor who had examined the defendant after she had been arrested and placed in jail, which was, as we understand it, on the morning of the day of the assault, who testified that he had conversed with her

2. SAME.

some ten or fifteen minutes and had examined her, and he was asked regarding her sanity at that time. Defendant objected to the question as immaterial, incompetent,

and irrelevant; no proper foundation having been laid for the introduction of expert testimony by the state. The objection was overruled and the doctor answered that he did not regard her as insane, or that she was intoxicated or suffering from delirium tremens. As we understand, appellant's contention here is that the witness did not show himself qualified, and that the question of defendant's sanity or insanity was not a subject of expert testimony. Neither proposition is sound. The objection was not to the competency of the witness, and it is clear that the question of defendant's condition of mind was made an issue by the defendant. Moreover, this witness had theretofore been upon the stand as a witness for the state and had established his general competency to speak. The weight of his opinion upon the question propounded, some competency being shown, was for the jury.

II. The principal and only debatable question in the case is the admissibility of the confession made by the defendant to the policeman. The method of securing the confession was fully shown by the testimony, and the trial court gave the following instructions with reference thereto:

3. CRIMINAL LAW: confession: admissibility: evidence: instruction.

Evidence has been introduced in the case of an alleged confession made by the defendant after her arrest, to the effect that she struck the blow which the evidence has been such as to show caused the death of Mary Mason. Evidence of a confession should be examined by you with care, but confession, if shown to have been voluntarily made uninfluenced by any threat or promise, is entitled to great weight. The law so guards the rights of every person accused of crime that evidence of confessions can not be received or considered unless it appears that such confessions were made voluntarily and freely and were not procured by undue influence in the way of either a promise of advantage to the defendant if a confession be made, or a threat of any harm to follow,

if not made, and, if a confession be obtained by any undue influence, any statement afterwards made under the influence of that confession or of the inducing cause thereof can not be admitted. Therefore if you find from the evidence that the alleged confession of the defendant was procured by the promise of any police officer that, by making a statement or confession, the defendant might or would be given leniency, her confession would not be voluntary and should be given no consideration by you in passing upon the question of her guilt. Any appeal or advice to tell the truth is not sufficient to justify the rejection of any confession, nor is the fact that it was induced by artifice, or that the defendant was at the time in custody or under arrest. The burden is on the state to show that the confession offered was voluntarily made.

The point here made and relied upon is that the trial court, instead of submitting the matters to the jury, should have held the confession involuntary and excluded it from the consideration of the jury. The exact point is that an officer or detective who secured the first confession from defendant while she was in custody stated to her that "it would be better for her if she told the truth." It seems that defendant made two confessions, one to this detective and others, and the other to two policemen and in the presence of the county attorney. The first was made at the county jail on the morning of the 12th of July in the presence of a detective and three or four officers, and the second on the next morning in the presence of some officers and the county attorney. The testimony for the state negatives any threats, promises, duress, or other improper means to secure the confession. Defendant testified on her own behalf to promises made her by various persons to induce her to make the confession, and the state in rebuttal produced a police officer, who testified as follows:

I know Lulu Bennett. I had a talk with her the 13th of July, 1908, at the county jail, just preceding the

death of Mary Mason. Q. I will ask you whether you told Lulu Bennett, in substance and in fact, that she would get off easier if she said she had done this act? A. I didn't put it in that way. Q. I will ask you whether you said she would get only thirty days if she did do it? A. I did not say it in that way. I talked with Lulu Bennett the morning following the crime committed. I lined out to her that the best thing for her sake in any event, whether Mrs. Mason was at home well, or whether she had been hurt, that the very best thing for her own sake was to tell the truth, if she wished to have the leniency of the court.

The most that can be said for this testimony is that it raised a conflict regarding whether any promises were made to defendant to induce a confession, and in such cases the matter is properly for a jury. *State v. Storms,* 113 Iowa, 392; *State v. Westcott,* 130 Iowa, 1. The matter was submitted to the jury upon this theory, and there was no error prejudicial to defendant. The instructions were quite as favorable to defendant as the law warrants. *State v. Jay,* 116 Iowa, 264.

Moreover, before the second confession was obtained, the county attorney cautioned the defendant that anything she said would be used against her.

4. CONFESSIONS.

III. That the testimony warranted the verdict returned we have no doubt. Defendant contends, however, that the crime of murder in the first degree should not have been submitted, because the testimony showed such a condition of mind on the part of the accused that she could not deliberately and premeditatedly have committed the offense. This was a fair question for the jury, and with its finding we are content. The defendant's confession is corroborated by sufficient testimony, and the record convinces us of the defendant's guilt of the offense charged. The judgment is therefore *affirmed.*

5. MURDER IN FIRST DEGREE: sufficiency of evidence.