STATE OF IOWA, Appellee, v. HARRY JOHNSON, Appellant.

No. 40258.

APRIL 14, 1930.

*Sager & Sweet,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

WAGNER, J.—The county attorney's information charges the defendant with the crime of larceny of five red hogs, the property of James Callender. During the summer and autumn of 1927, Callender was the owner of Duroc Jersey (red) hogs, which were kept in a 70-acre pasture upon his farm. The pasture joined what is known in the record as the "Spafford Woods." The larceny is claimed to have occurred on the afternoon of October 6, 1927. It is shown by the testimony of Callender that the partition fence between his farm and the Spafford land was out of repair in one or more places, so that hogs could easily pass through the same; that some of his red hogs disappeared at this time. It is shown by the record that Lewis Smith, Ralph Smith, and Dale Smith have confessed their guilt of the crime. According to their testimony, the three Smiths, the defendant, and his brother, Victor Johnson, during the afternoon of October 6, 1927, were hunting on the Spafford land, and came upon five red hogs, which they determined to appropriate. It is shown by the testimony of the Smiths that the five boys, acting together, drove the hogs across the Spafford land to an old shed or chicken house standing thereon, across the road from the home of defendant's mother; that they drove the hogs into this building and closed the same; that this was around 5 o'clock in the afternoon; that one of the Smiths stood guard, while the other four boys went to get something to eat, after which they returned to the building; that one Harold Jordan, of Horton, the owner of a truck, was obtained, for the purpose of conveying the hogs; that a chute was carried by the boys from the Mrs. Johnson home, across the road from the building, and by the aid thereof, the five hogs were loaded into the Jordan truck, and from there taken to the Victor Johnson home; that this was done after night; that the five boys accompanied the hogs to the Victor Johnson home, where they were unloaded for the night; that, the next morning,

Jordan again appeared with his truck at the Victor Johnson home, and the hogs were loaded therein, and Ralph Smith, Dale Smith, and Harold Jordan took them to Waterloo, where they were sold to the Rath Packing Company for $96.49. It is shown that said hogs corresponded in size with hogs which disappeared from the Callender farm at this time. The aforesaid check was made payable to Ralph Smith, who testifies that the money was divided into six parts, and that he paid $16.08 to each of the two other Smiths, to each of the two Johnsons, and to Harold Jordan, the truck driver. The defendant was arrested on November 22, 1927, and taken to the county jail, where, according to the testimony of the sheriff, the deputy sheriff, and the city marshal, he confessed his guilt.

The defendant alleges as grounds of error the insufficiency of the evidence to support the verdict, and that the evidence of the defendant's confession or admissions of guilt was improperly received, and claimed prejudicial misconduct on the part of the trial court.

We will first consider the appellant's objection to the evidence relative to defendant's confession or admissions of guilt. Upon the arrest of the defendant, he was taken to the county jail, where, in the presence of the county attorney, the sheriff, the deputy sheriff, and the city marshal, as the result of inquisitorial procedure, he told them of the hunting expedition, as hereinbefore related by the Smiths, and of the discovery of the hogs and the driving of them into the shed, in which he participated, and of the hauling away of the hogs the next morning, and that he had received his share of sixteen dollars and some odd cents for the sale of the hogs; that they thought they were Mr. Callender's hogs; that he and his brother had made up their minds, before they were taken into custody, that they would not give anything away; that he did not care so much for himself, although he was in it, but that he had a lady friend in town who would not think much of him after this, and that he had a number of relatives, for whom he felt sorry.

It further appears that, after the aforesaid confession, it was thought advisable, because of the crowded condition of the county jail, to take the defendant and Dale Smith to the city jail, which was done. But, upon arrival there, finding the same occu-

pied by a number of tramps, the two boys expressed a preference to be in the county jail; and while returning, defendant asked the sheriff if he did not think there was some way he could get out of this, saying, ''I will give just $1,000 if I can get out of this.'' This latter remark is testified to by both the sheriff and Dale Smith.

Relative to the confession, the defendant takes a double attitude: First, that he did not make the confession or admissions testified to by the officers; and second, that he was told by the officers that, if he would confess, he would get a light sentence, of not over 30 days and a small fine, and if he did not, the matter would be brought before the grand jury, and he would get from 5 to 10 years. The sheriff, deputy sheriff, and marshal all testify that there was no promise of leniency extended to him in the event that he confessed; that he was told, at the start of the examination by the county attorney, that he did not have to talk to them one minute if he did not want to, that it was optional with him, and that anything said by him would be used in evidence against him. It is shown that there was no force, violence, or coercion used, and, according to the testimony of the officers, no threats were made, and no promise of leniency extended, although he was admonished to tell the truth. At the start, he denied his guilt. The officers testified that, after they had conversed for some time, the defendant made a request to talk with one of the Smiths, who was in another portion of the jail, which permission was granted, during which time none of the officers were in their presence; that, after a little while, the defendant returned, and expressed a desire to make a clean breast of the whole thing, and then told his acts in connection with the larceny, as hereinbefore related. The Smith boy testifies that the defendant talked to him, and that he told the defendant that he was going to plead guilty.

As held by the trial court, it was for the jury, under proper instructions, to determine from the evidence whether the confession and admissions were made voluntarily, and without having been induced by any threats or promises. The court properly told the jury that evidence of such confessions or admissions could not be received or considered unless it appeared that they were made freely and voluntarily, and were not procured by undue influence in the way of promise or advantage, however

slight, to the defendant, if the confession was made, or a threat of any harm to follow, if they were not made; that, if they found that the alleged confession or admissions of defendant (all of which he denies having made) were in fact made and procured by a promise, express or implied, by the sheriff or county attorney, or by any police officer, that the defendant might or would be given leniency or consideration by the court or officers, to his advantage, the confession would not be voluntary, and should be given no consideration by them in passing upon the question of his guilt; and that the same would be so if such confession or admissions were obtained under the influence of threats of any kind; but that any appeal or advice to tell the truth, and the fact that the defendant was, at the time, in custody or under arrest, if he was so, or in charge of the officers, would not alone be sufficient to justify the rejection of the confession, if any was made. The court also properly told the jury that the burden was upon the State to prove, beyond a reasonable doubt, that the confession was voluntarily made. The question as to whether the confession, if any was made by the defendant, was free and voluntary, was for the determination of the jury, under proper instructions. See *State v. Storms*, 113 Iowa 385; *State v. Harding*, 204 Iowa 1135. The defendant relies on *State v. Thomas*, 193 Iowa 1004; but, as shown by the record, the manner of obtaining the confession in the instant case is not similar to, or to be compared with, that used in the cited case. *State v. Storms*, supra, and *State v. Harding*, supra, are controlling at this point. When it clearly appears from the record that the alleged confession was not freely and voluntarily made, or when the State, by its own evidence, negatives these essentials to its use in evidence, then it becomes the duty of the court to sustain the objection to the confession, and refuse its submission to the jury. See *State v. Thomas*, 193 Iowa 1004; *State v. Harding*, 204 Iowa 1135. Such is not the instant case. It is settled in this state that, where the free and voluntary character of the statements relied upon as a confession is the subject of dispute or conflict in the evidence, the question is for the determination of the jury, under proper instructions. *State v. Storms*, 113 Iowa 385; *State v. Harding*, 204 Iowa 1135.

The appellant contends that the evidence is insufficient to warrant a conviction. With this contention we do not agree.

Appellant's primary complaint in this regard is that the evidence fails to establish the fact that the hogs stolen were the hogs of James Callender. For the establishment of this fact, the evidence need not be direct, but may be circumstantial. The court quite properly told the jury that this proposition may be proven by circumstances, as well as by direct evidence. See *State v. Hoppe*, 39 Iowa 468; *State v. Clark*, 145 Iowa 731. With reference to the testimony of the Smiths, the court properly instructed the jury that they were accomplices, and that a conviction could not be had upon their testimony, unless corroborated by other credible evidence tending to connect the defendant with the commission of the offense, and that the corroboration would not be sufficient if it merely showed the commission of the offense by someone, or the circumstances thereof. There is ample corroborating evidence tending to connect the defendant with the commission of the offense. There is in the record the testimony of James Callender, hereinbefore mentioned, relative to the condition of the fence and the disappearance of his hogs at the time in question; there is other testimony in the record relative to the dilapidated condition of the fence and the easy accessibility from the hog pasture on the Callender farm through the fence to the Spafford land. The witness Ralph Smith testified that he had seen these same hogs dozens of times in the woods there, and then was asked the question, "On whose premises did you see them?" and he answered "James Callender's." The sheriff testified that the defendant, as a part of his confession, or admissions of guilt, said a number of times that they thought that they were Mr. Callender's hogs. The city marshal testified that the defendant said, "These hogs belonged to James Callender." The hogs sold the next day at Waterloo compare in color and weight with the hogs of Callender which disappeared at the time in question. According to the officers, the defendant admitted that he had received his share of the sale price of the hogs. It is thus apparent that there is ample evidence to support the verdict. Indeed, under the record, a verdict other than that returned by the jury could hardly have been anticipated.

Relative to the claimed prejudicial acts of misconduct by the trial court, no claim of prejudice was asserted during the trial, or exceptions taken. Therefore, the same needs no con-

 sideration. However, we have read the record with care, and are abidingly satisfied that there was nothing said or done by the trial court which worked to the prejudice of the defendant. Indeed, his rights were at all times most carefully and ably guarded and protected by the court.

We believe that the defendant had a fair trial. The verdict is amply sustained by the evidence, and the judgment of the trial court is hereby affirmed.—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.