GEORGE R. JUSTIS, Appellee, v. UNION MUTUAL CASUALTY COMPANY, Appellant.

No. 41098.

OCTOBER 25, 1932.

Maxwell & Ryan, for appellee.

Harold S. Thomas, for appellant.

PER CURIAM.—On the 27th day of March, 1928, the plaintiff (appellee) secured from the defendant company an accident policy which provided for certain payments for "the effects resulting directly and exclusively of all other causes from bodily injuries sustained during the life of this policy, solely through *external, violent and accidental means* (suicide, sane or insane, or any attempt thereat, sane or insane, not covered) such bodily injury so sustained being hereinafter referred to as 'such injury'."

It is conceded that the policy was in full force and effect on the date of the alleged injury and that it provided one hundred dollars per month for total disability that was the direct and exclusive result of accidental means.

It appears that on the 8th day of December, 1928, about one o'clock in the afternoon, in Onley, Virginia, the plaintiff started from his home on a business trip downtown to the post office and bank, about four hundred yards away. It is claimed that, when a short distance from his home, he slipped and threw up his hands in an attempt to catch himself, apparently falling partly on one arm. He claims to have felt a stinging sensation through the small of his back at or very shortly after this slipping. He went on downtown to the bank and the post office, transacted his business, and returned to his home. On arriving at his home, he suffered a hemorrhage from the mouth. It appears that other hemorrhages followed.

This suit was started December 7, 1929. The defendant answered, admitting the issuance and delivery of the policy, but denied that the disability claimed by the plaintiff is the effect resulting, directly and exclusively of all other causes, from bodily injuries sustained solely through external, violent and accidental means.

In the second count, the defendant alleged that the disability of which complaint is made by the plaintiff is the result of gastric ulcers present in the stomach of the plaintiff at the time of the alleged accident.

Another count in the answer raised the question of the sufficiency of the notice to the company of the injury.

By written stipulation, depositions were taken in the east.

On September 19, 1930, a long amendment was filed to the petition in which, among other things, the plaintiff attempted to enlarge upon the substance of the original petition.

On September 22, 1930, the trial was begun, which resulted in a verdict and judgment for the plaintiff. The defendant appeals.

I. The principal contention of the appellant pertains to the introduction of expert testimony on behalf of the plaintiff.

Several physicians were introduced as witnesses. The medical testimony is quite voluminous. One of the main questions in this medical testimony was whether the disability of the plaintiff resulted from stomach ulcers or whether his disability was "the effects resulting directly and exclusively of all other causes from bodily

injuries sustained during the life of this policy *solely through external, violent and accidental means."*

For the purpose of illustration only, we quote a few of the questions propounded to the plaintiff's medical witnesses and a few of the answers. The following questions and answers appear in the record of the testimony of Dr. Kellam. To each question there was interposed a proper and sufficient objection, which was overruled, and in most of the instances, a motion was made to strike the answer from the record.

"Q. Dr. Kellam, from your knowledge of this case, what do you now state was the cause of his present condition? A. Well, when I first was called in that morning to see him, of course with all this blood on the floor and a history of what I saw and what I found, I felt that he had had gastric hemorrhage. In other words, simple bleeding from the stomach. When I got the history, I felt firmly convinced that the fall he had—I don't know that he actually fell, but here is what he said: that he was going downtown on the sleet and he slipped and threw his hands out, apparently as any man will, to prevent falling. He did not feel any inconvenience, except he felt that he had a little snatch or jerk in his body, maybe a little bit of pain, nothing to amount to anything. He went on downtown to the post office and bank and transacted his business, which probably took him a period of a half hour, then walked on back home; and before he reached home he began to feel as if he was getting exhausted and kind of faint. When he reached his home he fell in the kitchen door and had this hemorrhage. The cause of his present condition, in being unable to navigate his feet, is due to some inco-ordination, lack of muscular co-ordination, and is due possibly to some condition in his spinal cord. Now, he did not complain as if he had had any severe injury in the cord when I first saw him. That came on gradually; but he was through that or had gotten over the severe condition that he had from the hemorrhage, and then he began to have these changes in the limbs and apparently a lesion in the spinal cord. Q. Then what was your conclusion as to the primary cause of the injury and the condition of Mr. Justis? A. The primary cause was the slipping on the ice. * * * I think that is where his trouble primarily started."

Later, the plaintiff sued out a commission and took a second

deposition by this same Dr. Kellam. In the second deposition, he was asked the following questions. (We omit the answers.)

"Q. After such an injury was received by the plaintiff at the time of the accident as testified by you in your former deposition, would such an injury alone, in your opinion, wholly and continuously prevent him from performing any and every duty pertaining to his business or occupation?"

"Q. What in your opinion, based upon your professional knowledge and skill and study of the case and of your patient, the plaintiff, George Justis, is the sole cause of plaintiff's physical condition, loss of time, disability from December 8, 1928, to the time of taking this deposition?"

"Q. Based upon your expert knowledge as a physician and your attendance upon the plaintiff, what in your opinion was the sole cause of plaintiff's present condition?"

"Q. In your opinion, were the hemorrhages and resulting spinal cord trouble of the plaintiff the direct and exclusive result of the fall sustained by the plaintiff, if he did sustain a fall as related by you in your former deposition, or were the hemorrhages and resulting spinal cord trouble the result of ulcers of the stomach, if the plaintiff was so afflicted?"

"Q. In your opinion, would such a fall, directly and exclusively of all other causes, cause profuse and violent hemorrhages and result in injury to the spinal cord, as was sustained by the plaintiff, and cause a continued injury to the present time?"

Dr. J. L. DeCormis was asked this question:

"Q. What do you now state, knowing the history of his case, what do you regard as the primary cause of his injury, Doctor?"

Dr. Landon E. Stubbs was asked this question:

"Q. What do you believe was the sole, proximate cause of his injury?"

Dr. R. A. Davis was asked this question:

"Q. If the evidence showed that Mr. Justis up to December 8, 1928, was a normal, healthy man, with no sign of stomach trouble whatever prior to that time, and that on his way out of his yard, with the ice from one-half inch to an inch thick, slipped and threw his hands either up or down in an effort to catch himself to save

himself from falling, and did fall on his right hand, and at that time felt a stinging in his back or stomach, and that within a few minutes afterwards, probably twenty minutes, he felt a nausea, and a minute or so after that he fell, and lost about one quart of blood from his mouth, what would be your conclusion from those facts, and the further fact that when you made an X-ray examination on April 19, 1929, you found no evidence of any gastric ulcer, either active or apparently healed, what would be your opinion as to the cause of the hemorrhage?"

Did the trial court err in permitting an answer to any one or more of the foregoing questions, after a sufficient and appropriate objection had been made thereto, and in permitting the answers to remain, notwithstanding a motion to strike same from the record? This question has frequently been before this court. Our cases have been gathered and considered in the case of Crouch v. National Livestock Remedy Company, 205 Iowa 51. In that case, an action was brought for damages for injury claimed to have been caused to hogs by feeding on a product furnished by the defendants. This court said, among other things:

"The following question was propounded to experts offered by appellee: 'What, in your judgment, would you say caused the death and the injury to the animals I have described?' * * * The question was a clear invasion of the province of the jury, and was improper. It left nothing for the jury to determine. The answer of the witness would decide the whole case. Such a question has been repeatedly condemned by this court. State v. Rainsbarger, 74 Iowa 196, 204; Nosler v. Chicago, B. & Q. R. Co., 73 Iowa 268; In re Estate of Betts, 113 Iowa 111, 116; Sachra v. Town of Manilla, 120 Iowa 562, 567; Martin v. Des Moines Edison L. Co., 131 Iowa 724; Bruggeman v. Illinois Cent. R. Co., 147 Iowa 187, 196; State v. Bennett, 143 Iowa 214; Sever v. Minneapolis & St. L. R. Co., 156 Iowa 664; Kirby v. Chicago, R. I. & P. R. Co., 173 Iowa 144; Budde v. National Travelers Ben. Assn., 184 Iowa 1219. Numerous authorities from other jurisdictions are cited in the cases supra, sustaining this general rule. It is true that, in State v. Hessenius, 165 Iowa 415, we recognized an exception in a criminal case that involved the death of a human being. In Kirby v. Chicago, R. I. & P. R. Co., supra, we said: 'Recurring again to the rule applicable to the examination of experts, it should be said that we have relaxed

it somewhat when the question arises as to the cause of the death of a human being. State v. Hessenius, 165 Iowa 415. Some other exceptions have been made, as in Searles v. Northwestern Mutual Life Ins. Co., 148 Iowa 65. We are not prepared at this time to enlarge these exceptions so as to approve the form of examination used on this trial'."

Later, in State v. Steffen, 210 Iowa 196, in a case involving the science of finger print identification, this court said:

" * * * We are not disposed to change the rule which has been established in this court for many years, to the effect that, while an expert may be permitted to express his opinion, or even his belief, he cannot testify to the ultimate fact that must be determined by the jury. Such testimony would invade the province of the jury, and determine the very issue which they must decide. Muldowney v. Illinois Cent. R. Co., 39 Iowa 615; State v. Rainsbarger, 74 Iowa 196; In re Estate of Betts, 113 Iowa 111, 116; Sachra v. Town of Manilla, 120 Iowa 562, 567; Thayer v. Smoky Hollow Coal Co., 121 Iowa 121; Martin v. Des Moines Edison L. Co., 131 Iowa 724; State v. Bennett, 143 Iowa 214; Bruggeman v. Illinois Cent. R. Co., 147 Iowa 187, 196; Sever v. Minneapolis & St. L. R. Co., 156 Iowa 664; Kirby v. Chicago, R. I. & P R. Co., 173 Iowa 144; Budde v. National Trav. Ben. Assn., 184 Iowa 1219; State v. Pillsbury, 195 Iowa 569; Eclipse Lbr. Co. v. Davis, 196 Iowa 1349; Crouch v. National Livestock Rem. Co., 205 Iowa 51, 58."

In the case of State v. Campbell, 213 Iowa 677, in which case the defendant was charged with murder, this court, when discussing the admissibility of a ballistic expert's testimony, said:

"The appellant relies upon our pronouncement in State v. Steffen, 210 Iowa 196, and cases therein cited; but a careful reading of the Steffen Case shows that the reason for the reversal was because the finger-print expert was asked to state the *fact* instead of his *belief, conclusion, opinion,* or *best judgment.* Neither the question asked nor the answer given in the instant case is analogous with those held improper in the Steffen Case." (Writer's italics.)

A few more quotations will suffice.

In Eclipse Lumber Co. v. Davis, 196 Iowa 1349, l. c. 1364, this court said:

"But it is a well recognized rule that an expert cannot be permitted to *express an opinion on the ultimate question to be determined by the jury,* which must inhere in the verdict. Martin v. Des Moines Edison Lt. Co., 131 Iowa 724, 739; Sachra v. Town of Manilla, 120 Iowa 562, 567; Thayer v. Smoky Hollow Coal Co., 121 Iowa 121." (Writer's italics.)

In Budde v. National Travelers Benefit Association, 184 Iowa 1219, l. c. 1226, this court said:

"Of course, an expert may not express an opinion as to what produced the kink in the bowel, as was, in substance, asked of Dr. Smith; for that was precisely what the jury was to determine, and was not the subject of expert evidence."

In Kirby v. Railway Co., 173 Iowa 144, l. c. 158, this court had before it a damage suit based upon a boiler explosion, by reason of which it was claimed the plaintiff was injured, and had for consideration the following question:

" 'Now, assuming the foregoing to be the facts, what, in your judgment, was the cause or causes that produced that explosion?' "

It was claimed the explosion resulted from certain alleged negligent acts of the defendant. This court said:

"The general rule prevailing in this state is to the effect that such a question is not proper, for it permits the witness to decide the whole case and leaves nothing for the jury to do except to believe or disbelieve the witness and render its verdict accordingly. Martin v. Des Moines Edison Light Co., 131 Iowa 724, 739; Sever v. Minneapolis & St. L. R. Co., 156 Iowa 664; Sachra v. Town of Manilla, 120 Iowa 562, 567; State v. Bennett, 143 Iowa 214, 217, and cases cited. * * * The proper form of question is to ask what was the probable cause of the explosion, or what might or might not have caused it."

In Sever v. Minneapolis & St. Louis Ry. Co., 156 Iowa 664, l. c. 668, this court, after citing many cases, said in reference to medical testimony:

"These cases and many others which might be cited draw a sharp distinction between a question calling for an opinion by an expert as to what might or might not have caused an injury and one calling for an opinion as to what in fact did cause it."

In Martin v. Des Moines Edison Light Co., 131 Iowa 724, l. c. 739, this court said:

"It is an accepted rule that, while experts may testify as to what in their opinion may or may not have been the cause of a given result or condition, it is not permissible for them to give their opinion as to the ultimate fact which the jury is organized to determine. See Sachra v. Town of Manilla, 120 Iowa 567, and cases there cited."

In Sachra v. Town of Manilla, 120 Iowa 562, l. c. 567, this court said:

"What in fact causes a wound or injury is a question for the jury, but what might or might not have caused it is a matter of expert testimony."

To further quote from our unbroken line of cases on the subject would unduly extend this opinion. The foregoing cases announce the definite and certain rule which has obtained in this state for many years. It has been announced in scores of cases and is well understood by the great majority of the bench and bar. It is based on sound reasoning and works substantial justice. It is completely in harmony with our system of jurisprudence.

In a case of this kind, it may become highly important that an expert shall enlighten the jury upon subjects of a technical or scientific character. The expert may be permitted, under certain circumstances, to express an opinion as to whether, in his judgment, a certain condition, arising in a scientific or technical field, may have been brought about from certain causes; but never may the expert be permitted to invade the province of the jury and express any opinion as to the ultimate facts to be determined by the jury. This rule has so often been announced by this and other courts that further discussion seems unnecessary.

██ II. The testimony of Dr. Kellam was taken on depositions, under signed stipulation of the parties. Later, the plaintiff again took Dr. Kellam's deposition, on a commission.

The defendant moved to suppress the latter deposition because the testimony of the witness had previously been taken, and as is claimed by the defendant, the second deposition was an attempt to avoid the effect of the testimony given in the first deposition.

We find no error in the record in this regard.

III.　Other errors are relied upon, but in view of a new trial, we deem it unnecessary, if not ill advised, to further comment on the evidence.

It follows that the cause must be, and is—Reversed.