STATE OF IOWA, appellee, v. JOHN MARTIN JOHNSON, appellant.

No. 47455.

(Reported in 39 N.W. 2d 123)

136

September 20, 1949.

Rehearing Denied December 16, 1949.

Maurice Harding, of Provo, Utah, and Dalton & Dalton, of Atlantic, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and John E. Budd, County Attorney, for appellee.

Hays, C. J.—Defendant was convicted of breaking and entering the Atlantic, Iowa, high school building in violation of section 708.8, Code of 1946, and he appeals.

There is no substantial dispute in the facts except as to the circumstances surrounding the making of an alleged confession. The record shows the following: About 1:30 a. m. Sunday, September 26, 1948, police found appellant's car parked near the entrance to the school building. It contained tools, some liquor and an Ohio license plate. While the authorities were preparing to remove the car, appellant came from a direction opposite the school building and claimed ownership thereof. He was taken into custody and placed in jail. During the forenoon of Sunday, he was questioned by the deputy sheriff and the county attorney as to his identification and was told that he would be held until Monday, pending further investigation. About noon, the sheriff's office was notified that the school building had been entered during the night. About three p. m. appellant was taken to the sheriff's office and questioned by the deputy sheriff, a highway patrolman and the county attorney until five p. m., when the county attorney left. About 5:15 p. m. the appellant made an oral statement to the two officers and was

returned to jail about six p. m. Around 9:30 a. m. Monday, the 27th, a clerk in the sheriff's office, in the presence of the deputy sheriff, took a statement from appellant, typed the same and witnessed the signing thereof by appellant. This statement was given in the jail near appellant's cell. About eleven a. m. he was taken before a justice of the peace where charges were filed, and he was then given the right to contact counsel. An indictment was returned October 8 and the trial commenced October 18, with the result as above stated.

I. Appellant asserts that the trial court erred in admitting into evidence the alleged confession, known in the record as Exhibit 4A and 4B, for the reason that the same was obtained by the use of threats and physical violence. The record shows the following proceedings: Upon the appellee's main case, the deputy sheriff and the patrolman told of the statement made by appellant and stated that it was freely and voluntarily given. They denied upon cross-examination that threats or force were used. The clerk stated that at the time she took the statement she heard no threats or promises and that she did not observe any bruises upon appellant. When she was asked to identify Exhibit 4A and 4B, objection was made upon the ground that it had been obtained by extortion and coercion. The objection was overruled, the court stating that there was no evidence to that effect. When the clerk was asked to read the same to the jury it was objected to upon the ground of its being irrelevant and incompetent. The same was overruled and the statement read into the record.

Appellant, as a witness in his own behalf, states that he was questioned, as above set forth. He says he was told by all three of his questioners that unless he told the truth and cleared up the matter he might lose his son; that after the county attorney left the office, the two officers immediately commenced beating and abusing him, especially the patrolman; that finally, to avoid further abuse, he told them he would agree to anything that they wanted; that after making the statement the patrolman told him that there was more to come; that he signed the statement on Monday because of the threats and abuse on Sunday.

Dr. Giegerich, as a defense witness, states that he examined appellant at the jail about noon on Tuesday, the 28th. He found both of his eyes bruised and discolored; his lips cut and bruised,

and his arms, legs and back bruised and discolored. He estimates they were caused some twenty-four to thirty-six hours prior to his seeing him and says that they could not be self-inflicted.

Reverend Dohrman, a Lutheran minister, states that he called upon appellant at the jail about noon of the 27th and observed a discolored eye and some blood on the back of his shirt.

Harley Johnson, a photographer, states that he took color pictures of appellant at the jail and observed the bruised condition of his eyes, arms, legs, and back. The pictures were not available at the time of trial as they had not been returned from New York, where they had been sent to be processed.

In rebuttal, appellee recalled the deputy sheriff, who merely stated that he had heard appellant's testimony and that it was not true. No other rebuttal testimony was offered. No motion was made to withdraw the exhibit from the record at this time, but in the motion for a directed verdict the question of the admissibility of the exhibit was presented to the court and overruled, the court stating that there was a direct conflict in the testimony sufficient to make it a question for the jury. Appellee, in its brief and argument, does not question the manner in which this proposition is presented and fully argues the same. We deem the question is properly before us for determination.

 Both parties agree that the Iowa law is well-settled on this question and appellee, in argument, states, "There can be no question but what the sole test of the admissibility of a confession in the State of Iowa is, was it made freely and voluntarily and without compulsion or inducement of any kind." That this is a correct statement of the Iowa rule, see State v. Fidment, 35 Iowa 541; State v. Storms, 113 Iowa 385, 85 N.W. 610, 86 Am. St. Rep. 380; State v. Thomas, 193 Iowa 1004, 188 N.W. 689; State v. Hofer, 238 Iowa 820, 28 N.W. 2d 475; State v. Webb, 239 Iowa 693, 31 N.W. 2d 337; Annotation 85 A.L.R. 870.

 It is also the established rule in Iowa that the admissibility of a confession is a question for the court to determine, but if a substantial conflict arises in the evidence the question becomes one for the jury under proper instructions. The rule is well-stated in State v. Harding, 204 Iowa 1135, 1145, 216 N.W. 642, 647, as follows: " "* * * it is settled in this state that, where the free and voluntary character of the statements relied upon as

a confession is the subject of *dispute* or *conflict* in the evidence, the question may properly be submitted to the jury. * * * If, however, it clearly appears from the record that the alleged confession was not freely and voluntarily made, or if the State, by its own evidence, negatives these essentials to its use in evidence, it is the duty of the court to sustain the objection and refuse its submission to the jury.' "

See also State v. Pardoe, 199 Iowa 842, 201 N.W. 75; State v. Heinz, 223 Iowa 1241, 275 N.W. 10, 114 A.L.R. 959.

We do not think a substantial conflict or dispute exists in the instant record. It is true that both the deputy sheriff and the patrolman upon the main case deny under cross-examination that they threatened or abused appellant, and the clerk states, on cross-examination, that she did not observe bruises on appellant or hear any threats and, as stated in State v. Kress, 204 Iowa 828, 832, 216 N.W. 31, 32, the State was not required "to affirmatively refute a matter of this character as part of its main case"; but, after appellant's case was in, including not only his own statement but also those of the physician, the minister and the photographer, the sole rebuttal was the deputy sheriff's to the effect that appellant's testimony was not true. So far as the physical violence is concerned the physical facts overwhelm the mere denial by the officers and clerk. Appellant was in the custody of the State during all of the time in question. It is without dispute in the record that he was in good condition at the time of his arrest on September 26. It cannot well be denied under this record but that somehow, somewhere, sometime, and by someone, appellant was subjected to personal abuse and violence while in the custody of appellee. In the absence of some showing as to this upon the part of the appellee, other than above-stated, the clear weight of the evidence is with the appellant and the confession should have been withdrawn from the record. In this connection see People v. Barbato, 254 N.Y. 170, 172 N.E. 458.

Further, upon the question of the alleged threats by the county attorney to the effect that appellant might lose his son, there is no conflict or dispute in the record, as it is virtually conceded by the county attorney in his cross-examination of appellant, as follows:

"Q. I believe you testified on direct examination I made some statement about your losing your son * * *? A. Yes, sir. * * * Q. Well, what did I say? A. Well, we would have to tell the truth, I would have to tell the truth and get this cleared up for I might lose my boy. Q. Have you lost the boy? A. Well, I understand that he is in the custody of my attorney * * *. Q. Do you remember we had a juvenile hearing recently? A. Yes, I do. * * * Q. So anything I said in regard to David [the son] wasn't a threat, was it?"

If in the instant case there was the bare statement by the appellant as to the threats, a dispute or conflict would exist and it would be similar to the situation in State v. Pardoe, State v. Harding, and State v. Webb, all supra. However, it is clearly one where the appellee by its cross-examination removes any doubt as to the threats being made. As to the effect of the threats upon appellant, see State v. Jay, 116 Iowa 264, 89 N.W. 1070.

Under this record we are satisfied that Exhibit 4A and 4B should have been withdrawn from the record and that the failure to do so constitutes reversible error.

II. Appellant assigns as error the giving of instruction No. 17, which is as follows:

"Exhibit 4A and 4B herein states that it was given by the defendant of his own free will and without any force of any kind. You are instructed that where a confession appears on its face to have been freely and voluntarily made, the burden is on the defendant to show by a preponderance or greater weight of the evidence that it was not made of his own free will, without any force, and, therefore, not voluntarily made and is void for that reason."

In instruction No. 18 the court told the jury, that if they found that the alleged confession had been obtained by force, threats, etc., they should not consider the same "as in any way bearing on the guilt or innocence of the defendant."

In considering this assignment of error it should be kept in mind that the question here considered is materially different from the one involved in Division I hereof, which deals with the admissibility of the confession. The question there considered has no connection with the jury. The question here entirely con-

cerns the jury and may be stated as follows: What is the proper instruction to the jury, the confession having been admitted in evidence?

Appellant assails instruction No. 17 as placing an undue burden upon the defendant. Appellee insists that it is a correct statement of the law and cites a long line of authority where the general statement is made that "the burden is on the defendant to show that it [the confession] is incompetent." Among the cases so cited are State v. Storms, supra; State v. Icenbice, 126 Iowa 16, 101 N.W. 273; State v. Plude, 230 Iowa 1, 296 N.W. 732; State v. Bisanti, 233 Iowa 748, 9 N.W. 2d 279. In each of the above cases, and in others cited, a careful reading thereof shows that the statement in question is limited to the question of the admissibility of the confession and they almost universally state that the question is for the jury under proper instructions. In no case cited by the appellee is found, nor has our own research brought to light, a single instance where the court has, as here, instructed the jury that the burden was upon the defendant to show the confession to be involuntary. In fact, in most of the cases the jury have been told that the confession may be considered by them only if they find that it was freely and voluntarily given, with no mention being made as to the burden of proof upon this question. Instruction No. 18, in the instant case, is in accord with the usual instruction. In the cases where the burden of proof is mentioned it has been placed upon the State. State v. Bennett, 143 Iowa 214, 121 N.W. 1021; State v. Bittner, 209 Iowa 109, 227 N.W. 601; State v. Johnson, 210 Iowa 167, 230 N.W. 513; State v. Boston, 233 Iowa 1249, 11 N.W. 2d 407. See also State v. Hofer, 238 Iowa 820, 28 N.W. 2d 475. We are satisfied that the burden rests upon the State to convince the jury that the confession was voluntary before they may consider the truth or falsity of the same. The instruction given in the instant case is erroneous and prejudicial to appellant in that it places an undue burden upon him.

While other assignments of error have been argued, we do not deem it necessary to pass thereon in view of the above pronouncement. For the reasons above set forth the judgment of the trial court is reversed.—Reversed and remanded.

HALE, SMITH, MANTZ, and MULRONEY, JJ., concur.

BLISS and OLIVER, JJ., concur in Division I.

GARFIELD and WENNERSTRUM, JJ., dissent.

GARFIELD, J. (dissenting)—I respectfully dissent.

On the night of September 25-26, 1948, someone entered the Atlantic high school by breaking the glass in four doors, apparently with a chunk of concrete, and removed to an outside entrance twenty-seven typewriters from one of the rooms. About two a. m. deputy sheriff Dale Cornell and a highway patrolman observed an automobile parked back of the building near the entrance. Kansas license plates were attached to the car. Inside the automobile were an Ohio license plate which defendant as a witness admitted belonged on the car, two different sizes of crowbars, different kinds of tools, two pairs of gloves, whiskey and beer bottles.

As the officers were about to move the car defendant hurriedly approached from the school grounds with a pair of gloves in his hands and said the automobile was his. He had on his person several driver's licenses, car registrations and addresses. As a witness defendant admitted he had not used his true name for some time. In his direct examination defendant made no denial of his guilt of the crime charged nor of the truth of his confession. Nor is the sufficiency of the evidence of guilt challenged upon this appeal.

I. One of the two assignments of error the majority sustains is thus stated in defendant's brief and argument: "The court erred in permitting Exhibit 4A and 4B [the confession] to be read in evidence over defendant's objection." The only objection to the reading in evidence of the confession is that it was irrelevant and incompetent. It is true defendant had objected to a much earlier question concerning the confession on the ground it was procured by extortion and coercion.

At the time the confession was read in evidence there was no testimony it was involuntary. On the contrary, both officers to whom defendant orally confessed on Sunday, the 26th, had testified emphatically defendant acted voluntarily, without force, violence or promises. In addition, the stenographer who typed the written confession said defendant talked freely, no promises or threats were made, the exhibit was read to defendant by deputy sheriff Cornell (the only officer present on Monday) before it was signed and she observed no marks or bruises on de-

fendant. Not a question was asked the stenographer on cross-examination. (The record does not support the majority's statement this stenographer was "a clerk in the sheriff's office.")

Defendant did not request any preliminary inquiry as to the voluntary character of the confession before it was read to the jury or at any other time (see State v. Plude, 230 Iowa 1, 5, 6, 296 N.W. 732, 734, and citations; State v. Bisanti, 233 Iowa 748, 9 N.W. 2d 279) and never moved or requested at any time that the confession be withdrawn from the record. While the claimed involuntary character of the confession was urged, with other grounds, in support of defendant's motion for directed verdict, no claim is made upon this appeal that defendant was entitled to a directed verdict.

Defendant was represented at the trial and in this court by counsel of wide experience chosen by him and the trial court was not, nor is this court, under any obligation to assume the role of associate counsel. In my opinion the trial court was under no duty upon his own motion to withdraw the confession from the consideration of the jury.

Aside from the above, if the claimed involuntary character of the confession had been properly raised upon the trial I think the question was for the jury and Division I of the majority opinion is a clear invasion of the jury's province for which there is no precedent in our decisions.

Defendant was questioned in the sheriff's office between three and six Sunday afternoon, the 26th. There is no claim of any threats or mistreatment after that time. The statements from which the written confession was prepared were made on Monday, the 27th, commencing at 9:30 a. m. The only officer present on Monday was the deputy sheriff. The highway patrolman, whom the majority regards as the principal offender, and the county attorney had no contact with defendant after six p. m. Sunday. If the officers were attempting to extort a confession by force they would naturally have tried to procure the written, signed statement without waiting from six p. m. Sunday until 9:30 the following morning.

It was a question for the jury whether the claimed mistreatment on Sunday induced the confession on Monday. See State v. Foster, 136 Iowa 527, 530, 114 N.W. 36; State v. Westcott, 130.

Iowa 1, 6, 7, 104 N.W. 341; State v. Webb, 239 Iowa 693, 699, 31 N.W. 2d 337, 340. See also State v. Hofer, 238 Iowa 820, 828, 28 N.W. 2d 475, 480.

Further, testimony for defendant tending to show mistreatment merely raised a conflict in the evidence for the jury to resolve. While it is true only the deputy sheriff was called in rebuttal to deny defendant's testimony regarding the claimed beating and abuse, both officers had denied quite fully and emphatically on the State's main case any mistreatment of defendant.

The deputy sheriff had testified:

"Those statements were voluntarily made by defendant. *No force was used on him at any time* to get those statements from him, and no promises were made * * * I didn't observe any marks or bruises on him Monday morning about 9:30. * * * I did not use any force or violence upon defendant on Sunday afternoon; didn't strike him; did not use a rubber hose or beat him over the head and body; did not observe Klinkefus [highway patrolman] strike him, kick him in the legs or hit him over the head with a night club."

The highway patrolman had said:

"I didn't strike him, choke him, kick him on the legs, beat him on the head with a night stick, cause his nose or head to bleed. I didn't break a chair in the sheriff's office or get him down and twist his leg. When I left there he was in as good condition as when he came down. I saw no marks or bruises upon him."

This testimony together with that of the stenographer's above referred to is utterly irreconcilable with defendant's evidence that he was beaten into confessing his guilt and creates a clear conflict. If the patrolman and the stenographer had been called in rebuttal little could have been added to the testimony they had already given.

The evidence of Dr. Giegerich as to his examination of defendant on Tuesday, the 28th, between noon and one p.m. and of the minister as to his observation of defendant shortly after noon on Monday is not irreconcilable with the testimony of the officers and the stenographer. The doctor said he did not believe de-

fendant's injuries could have been self-inflicted "without some special help or helper." He also testified three times the injuries were incurred about twenty-four hours before his examination or within a few hours thereof. (The record does not support the majority's statement the doctor estimated "they were caused some twenty-four to thirty-six hours prior to his seeing" defendant.) There is no claim defendant was abused by the officers within forty-two hours before the doctor's examination.

It is significant the doctor testified to much more extensive bruises than did the minister who was alone with defendant for a time twenty-four hours before the doctor saw him. The minister observed only a blackened eye and a blood spot on the back of defendant's shirt. It is significant too that neither the minister nor the doctor, who made notes of his examination, observed any marks on the top of defendant's head where defendant said he was beaten most severely. Dr. Giegerich testified, "I don't have any notes relative to any wounds on the head or scalp other than those of the face." In contrast with this defendant said: "Q. Was your head cut? A. It was. I guess I must have been hit twelve or fifteen times or more on top of the head. There was knots all over it, every place."

The photographer who testified for defendant did not see him until September 29th and 30th.

I think the testimony as to a threat regarding defendant's boy did not require the exclusion of the confession. Defendant testified the two officers and perhaps the county attorney told him on Sunday (the day before the written confession was made) he would have to tell the truth and get this cleared up for he might lose the boy. Regarding this claimed threat defendant said on cross-examination, "To the best of my memory you mentioned it too. I know definitely the others did." Testimony of the officers and the stenographer as to the voluntary character of the confession is in conflict with defendant's evidence upon this point.

That the testimony regarding the boy did not require the exclusion of the confession see State v. Webb, supra, 239 Iowa 693, 31 N.W. 2d 337; State v. Plude, supra, 230 Iowa 1, 296 N.W. 732; State v. Strable, 228 Iowa 886, 293 N.W. 441.

What the majority really holds is that the trial court was

bound to withdraw the confession from the record because the State did not show what caused the bruises the doctor observed forty-two hours after it is conceded the officers stopped talking to defendant. As to this it.was sufficient to show the officers did not mistreat defendant. As stated, both officers positively so testified and the deputy sheriff and the stenographer both said defendant talked freely when the written confession was made and they observed no marks or bruises upon him at that time. This created a clear conflict for the jury to decide.

The trial court felt there was a direct conflict in the testimony as to the voluntary character of the confession and it was not clear to him it had been illegally procured. Under our uniform holdings it was therefore entirely proper and indeed the trial court's duty to submit the question to the jury. State v. Hofer, supra, 238 Iowa 820; 829, 28 N.W. 2d 475, 480, and citations; annotation 170 A.L.R. 567, 587; 20 Am. Jur., Evidence, section 533, n.5.

Such a ruling should not be held reversible "unless there was manifest error. * * * The trial court saw and heard the witnesses, and had better knowledge of the facts than we can possibly have; hence its conclusion will not be disturbed, unless clearly and manifestly erroneous. [Citations.]" State v. Storms, 113 Iowa 385, 392, 85 N.W. 610, 612, 86 Am. St. Rep. 380, 385. Numerous authorities are to the same effect. See for example State v. Plude, supra, 230 Iowa 1, 6, 296 N.W. 732, 735. See also 20 Am. Jur., Evidence, section 537.

Further, the admissibility of a confession is to be determined by the evidence at the time it is received or rejected. It is not error to admit a confession when at that time it appears to have been voluntary although subsequent testimony may show it to have been involuntary. Such later evidence creates a conflict for the jury to decide and does not require the exclusion of the exhibit. See State v. Kress, 204 Iowa 828, 832, 216 N.W. 31; 22 C.J.S., Criminal Law, section 838, page 1470; People v. Knox, 302 Ill. 471, 134 N.E. 923, and citations.

At our last sitting we held that where a written exhibit was properly received subsequent testimony under which it would be inadmissible "was a matter for consideration by the jury * * * but the court was not required because of such testi-

mony to exclude the exhibit [citations]." Eaves v. City of Ottumwa, 240 Iowa 956, 967, 38 N.W. 2d 761, 767, where we held a motion to exclude the exhibit was properly overruled.

Under these authorities the court was not in error here, after the confession was properly admitted, in not later excluding it on his own motion.

If this confession was inadmissible it should have been so held before it was read to the jury. As the majority concedes, there was then no basis for excluding it. It would be of little practical benefit to defendant in the eyes of the jury to withdraw the confession from its consideration at the end of the case after the jury had been fully aware of the contents of the paper throughout the trial.

In People v. Barbato, 254 N.Y. 170, 172 N.E. 458, cited by the majority, the accused was grilled by officers from about midnight to six a. m., until he wrote on a card "I kill Julia Musso." The case is not in point.

"The policy of the future, then, should be to receive all well-proved confessions in evidence, and to leave them to the jury, subject to all discrediting circumstances, to receive such weight as may seem proper." III Wigmore on Evidence, Third Ed. (1940), section 867.

II. Division II of the majority opinion is a plain repudiation by a bare majority of this court of at least a dozen Iowa cases decided during the last forty-eight years.

The only exception in the court below to instruction No. 17 (quoted by the majority) is "that it places upon defendant the burden of showing by a preponderance or greater weight of the evidence that the confession was not voluntarily made, whereas the true rule is that when a confession appears on its face to be free and voluntary, the presumption arises that it is voluntary, and the defendant is called upon to introduce only enough evidence to rebut this presumption."

Under our repeated holdings this is the only objection to the instruction that will be considered upon appeal. The majority ignores this fundamental proposition and does not consider the exception to the instruction, much less decide the question thereby presented.

Defendant's exception expressly concedes "the true rule

is that when a confession appears on its face to be free and voluntary, the presumption arises that it is voluntary." His principal complaint against instruction No. 17 is the inclusion therein of the words "by a preponderance or greater weight of the evidence" which are underscored in the first sentence of his argument upon this assigned error. The instruction, except for the phrase just quoted, does not differ essentially from defendant's first requested instruction which states, "if you find that any alleged confession was made under the influence of fear or was obtained by force and violence practiced on defendant, you should disregard such confession."

If instruction No. 17 had omitted the expression regarding preponderance of the evidence the jury might have erroneously concluded defendant was required to show beyond a reasonable doubt the confession was involuntary. See 53 Am. Jur., Trial, section 733.

Aside from the above, I think instruction No. 17, in connection with No. 18, is proper as against the objection to it raised by the majority. We have never held the State has the burden of proving the voluntary character of a written confession which purports on its face to have been freely made. On the contrary, we have held in a long line of decisions the burden to prove such a confession was involuntary rests on the accused. Five such opinions have been written by four members of the present court.

In State v. Storms, 1901, supra, 113 Iowa 385, 390, 391, 85 N.W. 610, 611, 86 Am. St. Rep. 380, we hold, "Where the confession appears on its face to be free and voluntary * * * the burden is on the defendant to show that it is incompetent." This has become the firmly established rule in Iowa. State v. Icenbice, 1904, 126 Iowa 16, 20, 101 N.W. 273; State v. Dunn, 1927, 202 Iowa 1188, 1192, 211 N.W. 850, 852 ("It is the well-settled rule in this state with respect to a confession of guilt that, where it appears to have been free and voluntary, the burden is upon the defendant to show coercion or inducement such as to require its exclusion. * * * The prevailing rule is that confessions are *prima facie* voluntary."); State v. Kress, supra, 204 Iowa 828, 832, 216 N.W. 31, 32 ("The presumption exists that a confession is voluntary." There was nothing in the Kress

confession to show it was voluntary) ; State v. Heinz, 1938, 223 Iowa 1241, 1253, 275 N.W. 10, 114 A.L.R. 959; State v. Strable, 1940, 228 Iowa 886, 892, 293 N.W. 441; State v. Plude, 1941, supra, 230 Iowa 1, 6, 296 N.W. 732; State v. Bisanti, 1943, supra, 233 Iowa 748, 751, 9 N.W. 2d 279, 281 ("The rule is that such confessions are prima facie voluntary and that the burden is upon the defendant to show coercion or inducement such as to require their exclusion.") ; State v. Boston, 233 Iowa 1249, 1253, 11 N.W. 2d 407, 409; State v. Hofer, 1947, supra, 238 Iowa 820, 827, 28 N.W.2d 475, 479; State v. Webb, 1948, supra (Smith, J.), 239 Iowa 693, 699, 31 N.W. 2d 337, 340 ("Where the confession appears to have been free and voluntary, the burden is on defendant to show otherwise."). See also State v. Von Kutzleben, 1907, 136 Iowa 89, 100, 113 N.W. 484; State v. Joy, 203 Iowa 536, 540, 211 N.W. 213.

The rule to which we have been so long committed, that such a confession is presumed voluntary and the burden is on defendant to show the contrary, prevails in a number of other jurisdictions. Hartzell v. United States (Gardner, J.), 8 Cir., Iowa, 72 F. 2d 569, 577, certiorari denied 293 U. S. 621, 55 S. Ct. 216, 79 L. Ed. 708 ("In the federal courts there is no presumption against the voluntary character of a confession, and the burden is not on the government in the first instance to show its voluntary character.") ; III Wigmore on Evidence, Third Ed., section 860; Underhill's Criminal Evidence, Fourth Ed., section 279; annotations 38 A. L. R. 116, 118, 125; 102 A. L. R. 641, 642, 643, 646; 22 C. J. S., Criminal Law, section 835; 20 Am. Jur., Evidence, section 536; 53 Am. Jur., Trial, section 733 ("According to some authorities, it is proper in effect to instruct the jury that if a confession appears prima facie to have been made without hope of benefit or fear of injury, the burden is upon the defendant to show that it was improperly induced.").

In State v. Bisanti, supra (Bliss, J.), 233 Iowa 748, 749, 750, 9 N.W. 2d 279, 280, cited by the State, we approve an instruction in all essentials similar to instruction No. 17 (in connection with No. 18) here which read:

"The burden of proof ordinarily rests on the State to show that such a confession is voluntarily made; but in the case of Exhibit 'A', which purports to be a written confession, it appears

on its face to have been made freely and voluntarily, and therefore the burden is on the defendant to show that it was not voluntary on his part,—that is, to justify the jury in rejecting it on the ground that it was involuntary, the evidence of the defendant on that point should outweigh the evidence of the State; and unless the defendant has shown by a preponderance of the evidence that his signature thereto was involuntary, as above explained, then the jury has a right to consider the confession, Exhibit 'A', and to give it such weight as in your judgment it is properly entitled to."

Our Bisanti opinion states, "The court was meticulous in its care to fully protect the rights of the appellant throughout the trial, *and in its instructions*. The appellant was fairly tried and we find no merit in the assignments of error, *and no error in the record*, justifying a reversal of the judgment." (Italics added.) Every member of the present court except the writer of the majority opinion herein, who was not then a member, joined in the Bisanti opinion.

The majority, which has obviously resorted to our records in an attempt to sustain its Division II, is mistaken in its assertion, "In no case cited by the appellee is found * * * a single instance where the court has, as here, instructed the jury that the burden was upon the defendant to show the confession to be involuntary."

Study of every Iowa decision which sheds any light upon the majority's challenge to instruction No. 17 reveals only one statement that may seem inconsistent with the numerous precedents in support of this dissent. In State v. Johnson, 210 Iowa 167, 171, 230 N.W. 513, 515, cited by the majority, it is said, "The court also properly told the jury that the burden was upon the State to prove, beyond a reasonable doubt, that the confession was voluntarily made." The confession there involved was oral and not as here a written one which purports to be voluntary. This distinction is fundamental. No authority is cited in the Johnson case for this assertion. No objection to the instructions was there urged. The statement is obiter dictum. We have never before cited the Johnson case for the quoted proposition.

Other cases cited in the majority's Division II do not support the conclusion there reached. State v. Bennett, 143 Iowa

214, 121 N.W. 1021, and State v. Bittner, 209 Iowa 109, 227 N.W. 601, like State v. Johnson, supra, involve only oral confessions or admissions. State v. Boston, supra, 233 Iowa 1249, 1253, 11 N.W. 2d 407, 409, and State v. Hofer, 1947, supra, 238 Iowa 820, 833, 28 N.W. 2d 475, 482, in effect point out that such an instruction as No. 17 here might well have been given.

In the Hofer opinion, concurred in by every member of the present majority, it is said: "We may observe that instruction 13, to defendant's advantage, does not say that a written statement by a defendant which purports to be freely given is prima facie voluntary and the burden to show the contrary rests upon him. See State v. Boston * * * and cases cited." The Boston opinion cites in support of a like statement State v. Bisanti and State v. Plude, both supra. The Boston and Hofer cases are the only ones cited in support of the majority's Division II where the confession appeared on its face to be voluntary.

The substance of any comment in the cases cited in the majority's Division II, except State v. Johnson, supra, upon an instruction that the State has the burden to prove a confession voluntary is merely that the accused, who was the appellant in all the cases, could not complain of such instruction. State v. Bennett, supra, 143 Iowa 214, 220, 121 N.W. 1021, 1023, observes, "The instructions were quite as favorable to defendant as the law warrants." State v. Boston, supra, says, "The court fully instructed the jury, in terms favorable to defendant, that before the exhibits could be considered it must first be satisfied beyond a reasonable doubt that the papers were signed freely * * *." (Here follows substantially the same statement heretofore quoted from State v. Hofer, supra.)

The majority attempts to distinguish the long line of cases heretofore cited on the ground the statements relied on herein (and doubtless by the trial court in preparing instruction No. 17) are "general" and "limited to the question of the admissibility of the confession." In fact, the statements are as specific as language can make them and they are made with reference to who has the burden to prove the involuntary character of a confession. In every instance they are supported by the citation of authority. There is no dissent upon this proposition from any opinion cited.

Certainly State v. Hofer, supra, 238 Iowa 820, 833, 28 N.W. 2d 475, 482, and State v. Boston, supra, 233 Iowa 1249, 1253, 11 N.W. 2d 407, 409, construe State v. Bisanti, supra, 233 Iowa 748, 749, 750, 9 N.W. 2d 279, 281, and State v. Plude, supra, 230 Iowa 1, 6, 296 N.W. 732, as authority for an instruction like No. 17 here.

But let us assume the majority has correctly distinguished the "long line of authority * * * that 'the burden is on the defendant to show that it [the confession] is incompetent.'" Our law is then left in perplexing confusion by the majority's Division II. Upon "the question of the admissibility of the confession" the burden is upon a defendant to show it is incompetent. But when it comes to instructing the jury a contrary rule prevails. Trial courts must instruct that the burden is upon the State to prove the voluntary character of a confession which purports to be freely made. (Whether such proof must be beyond a reasonable doubt is left to speculation.) It is obvious such a decision will not be of long standing.

The rule *defendant concedes has heretofore prevailed in this State* that a confession which purports to be voluntary is presumed to be such, as applied to this case, is consistent with these recognized presumptions—against undue influence and coercion, that a written instrument is voluntary, that public officers perform their duty and do not violate the law and the presumption in favor of legal as against illegal conduct.

Referring to the rule that confessions are prima facie admissible and the defendant is required to show that the alleged improper inducement existed III Wigmore on Evidence, Third Ed., section 860, page 344, states, "This is the practical and natural rule; for if there is any reason to object to the confession, no one can know it better than the defendant."

I would affirm.

WENNERSTRUM, J., joins in this dissent.